Filed 5/23/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DONALD T. GRAPPO,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>HEATHER McMILLS et al.,<br><br>    Defendants and Respondents. | A147522<br><br>(Alameda County<br>Super. Ct. No. RG13702180) |

Representing himself, appellant Donald T. Grappo filed a complaint purporting to allege 10 causes of action. Seven of the causes of action were set forth in one paragraph, the other three ranging from two paragraphs to five—a complaint, we note, that as framed could not have withstood a demurrer. Grappo had the complaint served on Kenneth McKean, a man named in the caption but not identified in the complaint—and who from all indications had no relationship with Grappo. Six months after such service—and without warning to anyone—Grappo filed a request for default against McKean and his firm (McKean & McMills), seeking a default judgment for $9,982,308.83, with a claimed itemization of damages referring to numbers nowhere found in the complaint. The clerk entered the default on July 1, 2014, but the court refused to enter judgment, entering an order listing seven specific reasons why.

On November 23, 2014 McKean died, a death of which Grappo was aware. Two weeks later, Grappo filed another request for default and court judgment, a request "not mailed" to anyone because McKean was "now deceased." This request sought a judgment in the amount of $12,012,818.88, once again with numbers found nowhere in the complaint. This time, however, Grappo filled in the declaration portion in the request

1

referring to "$60,000," an amount in the prayer for the claimed value of personal property referred to in the eighth cause of action "belonging to some of the heirs of the Michael A. Grappo 2003 Trust." Apparently based on that, the court entered judgment for Grappo and against McKean and McKean & McMills for $60,000 plus costs of $750.

Respondent Aubrey Cambra, the trustee of McKean's trust, learned of the default judgment when a creditor's claim was made in McKean's estate, and filed a motion to vacate and set aside the default judgment. Grappo, now represented by counsel, opposed the motion asserting, however falsely, that at "the time of the entry of judgment [Grappo] was unaware" McKean had died. The trustee filed a reply, and the matter came on for hearing before the same trial court which had entered the judgment. Following a lengthy hearing, the trial court entered a comprehensive order vacating the judgment as to McKean.

Grappo appeals from that order, an appeal we reject as the trial court was right. And we publish the opinion, to remind trial courts that however burdened they be, they must vigilantly attend to their duty in connection with the default process, " 'to act as gatekeeper, ensuring that only the appropriate claims get through.' " (*Fasuyi v. Permatex, Inc.* (2008) 167 Cal.App.4th 681, 691 (*Fasuyi*); *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 272–273 (*Kim*).) Grappo's claim here should not have gotten through, the default judgment never entered in the first place.

## THE PROCEEDINGS BELOW

On November 8, 2013, "[s]elf [r]epresented" Grappo filed a complaint. The complaint names five defendants, two entities and three individuals, not one of which or whom is described or identified. Indeed, Grappo does not even identify himself, or describe any claimed connection or relationship with any of the defendants, his complaint beginning as follows: "COMES NOW the Plaintiff, Donald T. Grappo and says that: on or about April 28, 2009 and continuing through the year 2012, Defendants, and each of them did willfully and with malice aforethought misappropriate funds belonging to the Michael A. Grappo 2003 Trust."

2

We digress momentarily from a description of the complaint to note that Grappo cannot be a proper plaintiff as to claims held by a trust. The proper plaintiff is the trustee. (Code Civ. Proc., § 369, subd. (a) [1]; *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1062.) In short, the complaint as pled shows that Grappo has no standing. It also shows that no cause of action is properly pled.

The complaint states on the front page that it is for "fraud, breach of fiduciary duty, gross negligence, misappropriation of funds." However, the complaint itself purports to allege many more causes of action, 10 to be exact, the first seven of which are each alleged in one paragraph. The complaint refers to only four amounts of money: a claimed abstract of judgment held by another Grappo in the amount of $3,477,259.08 (set forth in the third cause of action), and three small amounts leading to a $1,000 per month claimed overpayment causing the Michael A. Grappo 2003 Trust to lose money. The latter references are in the first paragraph of the eighth cause of action, for "gross negligence and defalcation," which also includes this second paragraph: "9. Defendant McKean further removed or authorized the removal of items of personal property belonging to some of the heirs of the Michael A. Grappo 2003 Trust without prior notification to said property owners and without ever notifying said property owners of the disposal of these items of personal property which were being stored at the Piedmont property site."

The prayer of the complaint sought this:

"2. All excessive attorney's fees returned to the heirs of the Michael A. Grappo 2003 Trust;

"3. All excessive Trustees fees charged the Trust by Trustees returned to the heirs of the Michael A. Grappo 2003 Trust;

"4. Punitive damages for loss of revenue to the trust determined and said amounts be returned to the heirs of the Michael A. Grappo 2003 Trust;

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

3

"5.   Punitive damages for failed [*sic*] to renew Abstract of Judgment in the sum of $3,477,259.08 plus interest thereon;

"6.   The sum of $60,000.00 which is the value of property removed from the Piedmont property site and disposed of without notification to the owner of said property."

On December 30, 2013, McKean was served at his home in Piedmont.

On June 30, 2014, Grappo filed a request for entry of default against McKean and McKean & McMills, LP.  Item 2 in the request, "Judgment to be entered," read as follows:

| "2.  Judgment to be entered. | Amount | Credits acknowledged | Balance |
|---|---|---|---|
| "a.  Demand of complaint….. $ | | $ | $           0.00 |
| "b.  Statement of damages | | | |
| "(1)  Special……………….... $ 9,981.558.83 | | $ | $ 9,981,558.83 |
| "(2)  General……………….. $ | | $ | $           0.00 |
| "c.  Interest…………………. $ | | $ | $           0.00 |
| "d.  Costs (*see reverse*)……... $ | 750.00 | $ | $       750.00 |
| "e.  Attorney fees…………… $ | | $ | $           0.00 |
| "f.  TOTALS……………….. $ 9,982,308.83 | | $        0.00 | $9,982,308.83" |

(Fn. and bold type omitted.)

Item 6, the declaration of mailing required under Code of Civil Procedure section 587, represented that the request was served on two law firms and on "Ken McKean, McKean & McMills LP, 28 Lorita Ave, Piedmont, CA 94611."  Interestingly, one of the law firms, Cooper, White & Cooper, LLP, had on April 18, 2014 substituted in as counsel for Heather McMills, apparently the other principal of McKean & McMills.

On July 1, the clerk entered the default.  However, the court entered an order denying the request for default judgment, indicating that it was "NOT ENTERED" for the following reasons, listing seven.

4

On November 23, McKean died, a death that obviously became known to Grappo. Two weeks later, on December 8, Grappo filed another request for default[2] and court judgment. Item 2 of this request read as follows:

"2. Judgment to be entered.

| | Amount | Credits acknowledged | Balance |
|---|---|---|---|
| "a. Demand of complaint….. | $ 2,000,000.00 | $ -0- | $ 2,000,000.00 |
| "b. Statement of damages | | | |
| "(1) Special……………….... | $ 3,477,259.08 | $ -0- | $ 3,477,259.08 |
| "(2) General……………….. | $ | $ | $ |
| "c. Interest…………………. | $ 6,504,309.80 | $ -0- | $ 6,504,309.80 |
| "d. Costs (see reverse)……... | $ 750.00 | $ -0- | $ 750.00 |
| "e. Attorney fees…………… | $ 30,500.00 | $ -0- | $ 30,500.00 |
| "f. TOTALS……………….. | $12,012,818.88 | $ -0- | $12,012,818.88 |

"g. Daily damages were demanded in complaint at the rate of $ 10% per annum per day beginning (date): 11/08/2000." (Fn. and bold type omitted.)

In item 6, the declaration of mailing, Grappo checked the box that a copy of the request was "not mailed to the following defendants," going on to state that "Defendant Ken McKean and Ken McKean as owner of McKean & McMills, LP, is now deceased and could not be served." No service was made on McMills, apparently the other "owner" of "McKean & McMills" who was still alive—indeed, as noted, represented by counsel.

Grappo also filed a five-paragraph declaration in the request, which declaration read in its substantive entirety as follows:

"A complaint was filed in the above entitled matter on November 6, 2013. This Plaintiff affirms that the value of property which was removed without notice from the garage at the Piedmont Avenue property belonging to Declarant Donald T. Grappo is approximately $60,000.00. This Declarant cannot provide receipts for any of said

---

[2] As the court noted below, and Grappo acknowledged, this second request for default was improper.

property in that any and all information in connection with said property was also stored at the Piedmont Avenue property and was destroyed along with the property itself.

"I attach a copy of an email sent to me from attorney Brittain Habegger on March 21, 2011 which states in pertinent part '. . . It is my understanding that having given you and other family members several years to collect from the garage those things. . .'

"At no time was there ever a notification given to me, or to the best of my knowledge, information and belief to any of my family members that Trustee McKean intended to remove and destroy any of my property stored in the Piedmont property garage."

No prove-up hearing was held. Rather, on December 22, the trial court filed a "Judgment Default" that Grappo recover from defendants Ken McKean and McKean & McMills, LP $60,000 plus costs of $750.00.

The clerk served notice of entry of judgment on Grappo. No service was made, or apparently even attempted, on McKean & McMills or McKean or McMills as individuals.

On February 17, 2015, Grappo sent a letter to the trial court that read in its entirety as follows:

"This letter is addressing the $10 Million dollar figure cited in my request for judgment. I thank the court for issuing the $60,750.00 judgment which reimburses me for the items of personal property stored at the Piedmont property. However, Mr. McKean committed so many egregious errors while acting as trustee of my father's trust, that it boggles the mind. I would appreciate you reviewing my request for judgment and considering issuing me a judgment connected with this missteps [*sic*] while trustee of the Michael A. Grappo 2004 Trust at your earliest opportunity.

"It has come to my attention that Mr. Ken McKean has passed away. He has property valued in the millions and I will have to file a creditor's claim soon in his estate if I am going to be able to collect some or all of the monies owed to me and my siblings as a result of his misdeeds.

6

"Thank you for your kind consideration."

Aubrey Cambra, trustee of the Kenneth A. McKean Trust, learned of the default judgment when Grappo filed a creditor's claim in McKean's estate. On November 4, 2015, Cambra filed a motion to vacate the default judgment and enter a different judgment. The motion references section 663; the memorandum of points and authorities refers to section 663 and also to section 473.5.

Grappo, now represented by counsel, filed opposition. Exclusive of exhibits, his substantive opposition was all of three pages, with two arguments: (1) that the motion was untimely; and (2) even if timely, it "must be denied on the merits, because there was no prejudice to Defendant McKean or Cambra."

Cambra filed a reply, and the motion came on for hearing before the same trial court that had entered the default judgment. The court heard extensive argument, lasting almost an hour. Among other things, Grappo's counsel argued there was no prejudice, that there was "nothing that could have been done" as McKean had defaulted. The court interrupted: "Well, motion to vacate the default." To which Grappo's attorney responded, "Right."

Following the hearing, the trial court entered its order granting the motion, vacating the judgment against McKean. The order was a comprehensive nine paragraphs, the first five of which detailed the procedural history leading to the setting before the court. The next three paragraphs set forth the bases for the court's ruling, as follows:

"Trustee contends that Plaintiff should have substituted Kenneth McKean's personal representative in this action and litigated against that personal representative in obtaining a judgment, as required by Code of Civil Procedure section 377.41.

"When a defendant in a pending action dies, the action may be prosecuted against the decedent's personal representative. Pursuant to Code of Civil Procedure section 377.41, the court shall allow a pending action that does not abate to be continued against the decedent's personal representative or, to the extent provided by statute, against the decedent's successor in interest. As a general proposition, judgment cannot be entered for or against a decedent, nor against the personal representative of the decedent's estate,

7

until the representative has been made a party by substitution, and a judgment entered against the decedent prior to substitution of a personal representative or successor-in-interest is subject to general attack. (*Sacks v. FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950, 956-957 [(*Sacks*)].) However, the judgment is not void, and it will be set aside only upon a showing of prejudice. (*Id.* at p. 957.)

"Trustee has made a sufficient showing to vacate the judgment against Defendant Ken McKean. It is undisputed that Plaintiff has filed a creditor's claim against the McKean Trust in Case No. RP15-765907 based on the Default Judgment in this action, and has filed another civil lawsuit against Trustee in Case No. RG15-779986, also based on the Default Judgment against Defendant Ken McKean. Trustee has established that she was not given notice of the existence of the default or the application for default judgment, and thus had no opportunity to seek relief from the default before Default Judgment was entered against Defendant Ken McKean. The prejudice to the Trust is clear, and Trustee has made a sufficient showing that the judgment against Defendant Ken McKean is void. (Code Civ. Proc., sec. 473(d).)"

Grappo filed a timely appeal from the order.

## DISCUSSION

### I. The Trial Court Order Was Correct

### A. Governing Principles: Defaults and Default Judgments

The law concerning section 473 relief was set forth by the Supreme Court in *Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233: "A motion seeking such relief lies within the sound discretion of the trial court, and the trial court's decision will not be overturned absent an abuse of discretion. [Citations.] However, the trial court's discretion is not unlimited and must be ' "exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' [Citations.] [¶] Section 473 is often applied liberally where the party in default moves promptly to seek relief, and the party opposing the motion will not suffer prejudice if relief is granted. [Citations.] In such situations 'very slight evidence will be required to justify a court in setting aside the default.' [Citations.] [¶] Moreover,

8

because the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations]." (Accord, *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478 ["very slight evidence is required to justify a trial court's order setting aside a default"].)

A ruling setting aside a default or default judgment is reviewed under the abuse of discretion standard, and an appellate court will reverse only upon " ' "a clear case of abuse" ' " and " ' "a miscarriage of justice." ' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)  In short, as one court of appeal recently described it, Grappo has a " 'daunting task.' " (*Dreamweaver Andalusians, LLC v. Prudential Ins. Co. of America* (2015) 234 Cal.App.4th 1168, 1171.)

### B. Governing Principles:  Appellate Review

The most fundamental principle of appellate review is that "A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; accord, *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140.) And, of course, we will uphold the decision of the trial court if it is correct on any ground. (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 769.)

In light of those principles and presumptions, the burden is on Grappo to demonstrate error—and also "prejudice arising from" that error. (*Gould v. Corinthian Colleges, Inc.* (2011) 192 Cal.App.4th 1176, 1181.)  He has done neither.

### C. Introduction to the Analysis

Grappo's opening brief is not a model of appellate advocacy.  The brief sets out what occurred below in a fashion favorable to him, the loser, rather than in support of the trial court's decision, which is bad enough.  Worse, both of Grappo's briefs continue the assertion his counsel made below, that Grappo did not have "knowledge of . . . McKean's death on December 8, 2014, when the Request to Enter Default Judgment was filed."  As noted, this is flatly false, as shown by Grappo's "under penalty of perjury" representation that McKean "is now deceased."  Such advocacy is not to be condoned.

9

The introduction to Grappo's brief distills his position in the following language: "Appellant Grappo is seeking to have the Order reversed as a matter of law, based on undisputed facts, such that the December 22, 2015 judgment against defendant McKean stands and remains in effect. Alternatively, the lower court Order could be reversed as an abuse of discretion, to the extent that any court actions were discretionary, given the violation of established legal principals [*sic*]. The Order should be reversed and Grappo's December 22, 2014 judgment against McKean should remain in effect." By no means.

### D. Grappo Has Not Demonstrated Error

Grappo's first argument is that the motion was late, beyond the time limits allowed by section 663.

To put the issue in context, Cambra's motion to vacate stated that it was made "pursuant to Code of Civil Procedure § 663 on the ground that the legal basis for the Judgment Default is incorrect and/or erroneous in that it is neither consistent with nor supported by the facts. Mr. McKean was deceased and the entity of which he was a general partner, McKean & McMills, LP, was not in existence at the time the Court entered the Judgment Default on December 22, 2014."

The essence of this argument was that because McKean was dead, the judgment was void. In support of the argument, Cambra cited many cases holding that, as one Supreme Court case cited by Cambra tersely put it, "A judgment rendered for or against a dead person is void . . . ." (*In re Estate of Parsell* (1923) 190 Cal. 454, 456)—language the Supreme Court first used in 1868, in *Judson v. Love* (1868) 35 Cal. 463.[3]

---

[3] Numerous cases have used such language since. (See, for example, *Johnson v. Simonelli* (1991) 231 Cal.App.3d 105, 107, fn. 1 ["If Violet died in 1989, the court's judgment entered against Violet in 1990 was in excess of its jurisdiction and void as it was entered against a person who was no longer a party."]; *Herring v. Peterson* (1981) 116 Cal.App.3d 608, 611–612 [trial court order was "in excess of its jurisdiction and void" where "defendant dies and no personal representative is substituted"]; *Estate of Edwards* (1978) 82 Cal.App.3d 885, 893 [judgment entered after party intervener died was "void" because "the action could no longer proceed as to her, and it became necessary that someone be substituted for her. [Citation.] This was not done . . . ."].)

10

Witkin describes this state of affairs this way: "*Death During Action.* If the defendant was alive when the action was begun and personal jurisdiction over him or her was obtained, the defendant was originally a party. Death occurring thereafter, before judgment, makes it improper to render judgment for or against the defendant without first taking the procedural step of substituting the executor or administrator. The failure to take this step is a departure from the mandatory requirements of the statute, and does result in a judgment for or against a person not a party. Hence, it seems clearly in excess of jurisdiction and subject to prevention or annulment by some form of direct attack. (See *Boyd v. Lancaster* (1939) 32 [Cal.App.2d] 574, 581 [reversal on appeal: 'The defect would appear to us to go to the jurisdiction to file and enter such an order']; *Estate of Cazaurang* (1939) 35 [Cal.App.2d] 556, 558 [prohibition issued to restrain trial]; *Hamilton v. Hamilton* (1948) 83 [Cal.App.2d] 771, 774; *Herring v. Peterson* (1981) 116 [Cal.App.3d] 608, 612 [trial court acted in excess of jurisdiction in dismissing action on motion of defense counsel, where defendant died and no personal representative was substituted] . . . .)" (2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 317, p. 929.)

Grappo's opposition did not even mention any of the cases cited in Cambra's brief talking about "void." In fact, the only case cited by Cambra referred to in Grappo's opposition was *Sacks, supra,* 7 Cal.App.4th 950, a case, as quoted above, the trial court referred to in its order.

*Sacks* arose in the context where plaintiff Sacks had summary judgment entered against him in favor of all defendants, including Glen Gaither, who had died. Sacks appealed, contending that it was error to enter judgment in favor of a defendant who had died. Addressing the contention, the court observed as follows: "As a general proposition, it is true, as Sacks contends, that under these provisions judgment cannot be rendered for or against a decedent, nor can it be rendered for or against a personal representative of a decedent's estate, until the representative has been made a party by substitution. [Citations.] A long line of cases has therefore allowed direct attack upon a judgment obtained without substitution of a personal representative after a party has died. [Citations.] In California, the rule can be traced back to the early Supreme Court

11

decision in *Judson v. Love* (1868) 35 Cal. 463, which observed that the proceedings after the death of the defendant were 'irregular and void as to him and his successors in interest. . . .' (*Id.* at p. 467.) However, this general proposition has not been applied blindly, but rather has acted to prevent prejudice to the parties because of lack of notice, lack of proper representation, or some other disadvantage." (*Sacks, supra,* 7 Cal.App.4th at p. 957.) The Court of Appeal went on to hold that any error was harmless, since none of the parties was prejudiced by Gaither's death. (*Id.* at p. 959.)

Sacks is cited as "cf." at the end of the Witkin passage quoted above, the author going on in the next paragraph to state that "This technical lapse [i.e., judgment against a dead person], however, does not render the judgment void and subject to collateral attack. The courts frequently describe it as a 'mere irregularity,' which renders the judgment 'voidable only.' (See *Hogan v. Superior Court* (1925) 74 [Cal.App.] 704, 709; *Machado v. Flores* (1946) 75 [Cal.App.2d] 759, 762; cf. *Bliss v. Speier* (1961) 193 [Cal.App.2d] 125, 126." (Witkin, *supra,* at p. 929.)

We are not aware of any void versus voidable case that deals with a default judgment taken against a dead person, as here. Perhaps in that case we might be inclined to hold in that situation that the judgment is void. Period. And, of course, a void judgment is subject to attack at any time. (*Hayashi v. Lorenz* (1954) 42 Cal.2d 848, 851; *Tearlach Resources Limited v. Western States Internat., Inc.* (2013) 219 Cal.App.4th 773, 779; *Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 43; *Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1239.)[4] Or perhaps using the *Sacks* analysis in the default situation, that death is per se prejudice.

But we need not make such a holding to affirm the trial court here, because we can affirm on the basis on which it ruled, applying *Sacks*, finding prejudice, and vacating the judgment under Code of Civil Procedure section 473, subdivision (d).

Grappo's second argument, his apparent attempt to overcome the trial court's ruling, is as follows: "The *Sacks* court's test for vacating a judgment involving a

_____

[4] As will be shown, the judgment here is void because the complaint does not support the default judgment entered for Grappo—indeed, any default judgment at all.

12

decedent upon a showing of prejudice does not apply to section 473 subdivision (d) relief." The argument is not clear, and no clarity is added by Grappo's distillation of it.

One thing that Grappo does argue is that reliance on section 473, subdivision (d) was not proper because it was "cited in [Cambra's] Reply brief, which does not meet explicit statutory requirements for a noticed motion." As noted, Cambra's motion papers cited section 473, though not subdivision (d), which was first cited in the reply brief. Regardless, Grappo's argument would not avail him, not in light of the cases that recognize a court has discretion to accept arguments or evidence made for the first time in reply. (See, for example, *Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1308; *Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362, fn. 8 [in summary judgment case, trial court had discretion to consider new evidence in reply papers as long as other party had opportunity to respond].)

Those cases would seem to apply a fortiori in the default context, with the strong presumption to provide a hearing on the merits. And most certainly in connection with section 473, which should be liberally construed, any doubts about its application to be resolved in favor of the party seeking relief from default. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 256 [" 'the provisions of section 473 . . . are to be liberally construed and sound policy favors the determination of actions on their merits' "]; *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980 (*Rappleyea*) ["[b]ecause the law favors disposing of cases on their merits, 'any doubts in applying section 473 must be resolved in favor of the party seeking relief from default' "].) As one Court of Appeal has described, "substantial compliance" with statutory requirements is all that is required to set aside a default judgment (*County of Stanislaus v. Johnson* (1996) 43 Cal.App.4th 832, 837), and that rigid application of the requirements "fails to give full remedial effect to the statute." (*Ibid.*; accord, *Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 29 [in applying section 473, trial courts " 'should employ a flexible rather than rigid or formalistic approach to decisionmaking' "].)

All this is particularly apt here, where from the very beginning—that is, page 4 of the reporter's transcript—the lengthy argument on Cambra's motion focused on section

13

473.  And, as quoted above, the trial court applied *Sacks* and found that: "Trustee has made a sufficient showing to vacate the judgment against Defendant Ken McKean. . . . Trustee has established that she was not given notice of the existence of the default or the application for default judgment, and thus had no opportunity to seek relief from the default before Default Judgment was entered against Defendant Ken McKean.  The prejudice to the Trust is clear, and Trustee has made a sufficient showing that the judgment against Defendant Ken McKean is void.  (Code Civ. Proc., sec. 473(d).)"

And prejudice there was, as Grappo's counsel conceded below, when the trial court interrupted her "no prejudice" argument with the terse observation, "Well, motion to vacate the default"—and counsel replied, "Right."  There was prejudice.  That ends Grappo's "abuse of discretion" argument.

The closing of Grappo's reply brief states that "equities and public policy strongly support maintaining the validity of the underlying judgment."  Nothing is cited in claimed support, which is perhaps not surprising, as the law is 180 degrees contrary, illustrated, for example, by *Au-Yang v. Barton* (1999) 21 Cal.4th 958, 963:  " '[T]he policy of the law is to have every litigated case tried upon its merits, and it looks with disfavor upon a party, who, regardless of the merits of the case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary.' "  *Fasuyi, supra,* 167 Cal.App.4th at p. 696, is similar:  " 'Because the law favors disposing of cases on their merits, "any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations]. . . ." '  In Witkin's typically succinct statement of the rule, the remedial relief offered by section 473 is 'highly favored and is liberally applied.' (8 Witkin, Cal. Procedure, Attack on Judgment in Trial Court, [(4th ed. 1997)] § 152, pp. 653–654 and numerous cases there collected.)"

Indeed, the only case cited by Grappo for this argument—cited for the proposition that there should be "finality of judgments"—makes this point in spades.  And hardly helps Grappo.  That case is *Rappleyea, supra,* 8 Cal.4th 975, which involved defendants from out of state who represented themselves.  The court misinformed defendants as to the correct filing fee for their answer, which caused the answer to be accepted for filing

14

eight days late. The clerk entered defendants' default, and plaintiff subsequently misinformed defendants that they had no legal rights under section 473, even though the six-month limitation period to seek relief had not expired. When defendants learned that a default judgment might soon be entered, they moved to set aside the default. The trial court denied the motion, eventually entered a default judgment, and the Court of Appeal affirmed. (*Rappleyea, supra,* at p. 980.) The Supreme Court reversed, with directions to reverse the default judgment and to instruct the trial court to set aside the entry of default, holding that the trial court abused its discretion in denying defendants' motion. (*Rappleyea,* at p. 985.)[5]

---

[5] We end this part of the opinion with brief comments about the dissent.

As Grappo's counsel conceded at oral argument, Grappo's complaint does not state a claim. Despite that, and despite that Grappo may be the poster child for an avaricious overreacher—improperly attempting to get a $12 million judgment against a known dead man—the dissent would resurrect the default judgment in Grappo's favor. Why is hard to fathom. The stated reason for doing so is "the public policy favoring the finality of judgments," citing *Rappleyea, supra*, 8 Cal.4th at p. 982—a case, as discussed, that actually held the default judgment was improper, and it, and the default itself, had to be set aside. Regardless, the dissent says what it says, and we offer these few observations about it.

The dissent approaches the setting before us contrary to our role here (presuming the order is correct); contrary to the role of any court dealing with defaults (discretion liberally applied to grant relief); and contrary to public policy (cases are to be tried on the merits). It also disregards how we are to read the record—in favor of the trial court and in support of the order.

In its thorough analysis, the trial court found that "Trustee has established that she was not given notice of the existence of the default or the application for default judgment, and thus had no opportunity to seek relief from the default before Default Judgment was entered against Defendant Ken McKean. The prejudice to the Trust is clear." The dissent states that this finding is not supported by substantial evidence, a position that includes that the dissent disagrees "that the Trustee's lack of opportunity to seek relief from the default before entry of the default judgment alone was enough." Indeed, and as noted, Grappo's counsel conceded as much below when, in the course of her argument that there was no prejudice, that there was "nothing that could have been done" as McKean had defaulted, the court interrupted: "Well, motion to vacate the default." Grappo's attorney responded, "Right." The dissent describes this as "little more than throat-clearing."

15

## II. The Default Judgment Was Not Supported

In *Fasuyi, supra,* 167 Cal.App.4th 681, we reversed a trial court that had denied relief from a default judgment, and remanded with instructions to vacate it and the default, to allow the defendant to plead. We began our discussion this way:

### "The Role of the Court in Default Judgments

"It is, of course, the case that there is no opposing party in a default judgment situation. Thus, cases properly recognize that in such situation 'it is the duty of the court to act as gatekeeper, ensuring that only the appropriate claims get through.' (*Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 868; see *Electronic Funds Solutions, LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1179.)

"California Judges Benchbook: Civil Proceedings Before Trial (CJER 2d ed. 2008) (Benchbook) is a treatise that 'focuses on the judge's role.' (Benchbook, *supra*, preface, p. v.) It provides 'practical working tools to enable a judge to conduct proceedings fairly, correctly, and efficiently. [It is] written from the judge's point of view, giving the judge concrete advice on what to look for and how to respond.' (*Ibid.*)

"Chapter 16 of the Benchbook deals with defaults and default judgments, and in its second section of advice states that '[a] judge may enter a default judgment against a defendant only if the plaintiff has precisely followed certain procedures that ensure that the defendant received sufficient notice of the pending action to make an informed choice as to whether to defend or ignore the plaintiff's claims. [Citations.] When the plaintiff fails to comply with these procedures, the defendant need not suffer the consequences of a default judgment. [Citation.]' (Benchbook, *supra*, § 16.2, p. 371.) As the Court of

---

The trial court found that the trustee did not have notice of the default. Notwithstanding this, and for some reason approaching the issue with a jaundiced eye, the dissent says "[f]or all we know from the *record* . . . the Trustee could have learned of the action from McKean before he died or from his partner and co-defendant, McMills, after he died but before the default judgment was entered." We do not read the record to attempt to contradict things. To the contrary, "factual inferences drawn by [the trial court] are presumed correct." (*Shapiro v. Clark* (2008) 164 Cal.App.4th 1128, 1139–1140.)

16

Appeal put it in *Lopez v. Fancelli* (1990) 221 Cal.App.3d 1305, 1312, the first case cited in the Benchbook: 'The rules pertaining to defaults and default judgments must be precisely followed to ensure that a defaulting defendant is aware of plaintiff's claims.' " (*Fasuyi, supra,* 167 Cal.App.4th at p. 691.)

The threshold issue in *Fasuyi* dealt with the various forms and papers that had to be filed preparatory to a proper default and default judgment. And so we quoted the sections of the Benchbook we did. Another section of the Benchbook is apt here, section 16.33, entitled "Judge's Evaluation of Allegations of Complaint." This is what it says:

"A judge may not enter a default judgment against a defendant unless the plaintiff's complaint states a cause of action against the defendant. *Taliaferro v. Davis* (1963) 216 [Cal.App.2d] 398. The allegations of the complaint are not deemed admitted by the default. The plaintiff must prove each essential element of the complaint entitling the plaintiff to a recovery against the defendant. The plaintiff may not introduce evidence on claims not pleaded in the complaint; this would operate as an amendment to the complaint, opening the default and entitling the defendant to respond. *Jackson v. Bank of Am.* (1986) 188 [Cal.App.3d] 375, 387–389.

"Plaintiffs in a default judgment proceeding must also prove that they are entitled to the damages claimed. *Barragan v. Banco BCH* (1986) 188 [Cal.App.3d] 283, 302; see *Don v. Cruz* (1982) 131 [Cal.App.3d] 695, 706–707 (award of $100,000 in damages at default judgment hearing in personal injury action was excessive in light of plaintiff's evidence which established only that she suffered some degree of discomfort without substantial evidence of disability); *Petty v. Manpower, Inc.* (1979) 94 [Cal.App.3d] 794 (damages not fixed by contract must be proved)." (Benchbook, *supra*, at p. 894.)

Justice Bedsworth has well described this responsibility, most recently in *Kim, supra*, 201 Cal.App.4th at pp. 272–273. Reversing the default judgment the trial court had entered, he repeated his "cautionary tale" for the trial courts: "And it is not the first time we have told this tale. As we previously explained in *Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 868, '[i]t is imperative in a default case that the trial court take the time to analyze the complaint at issue and ensure that the judgment sought is not in

17

excess of or inconsistent with it.  It is not in plaintiffs' interest to be conservative in their demands, and without any opposing party to point out the excesses, it is the duty of the court to act as gatekeeper, ensuring that only the appropriate claims get through.  That role requires the court to analyze the complaint for itself—with guidance from counsel if necessary—ascertaining what relief is sought as against each defaulting party, and to what extent the relief sought in one cause of action is inconsistent with or duplicative of the relief sought in another. . . .' "  Then, after noting that the trial court there, and in other cases, did not do what is required, and had entered the judgment in error, he concluded with this:  "We need to shore this up.  The court's role in the process of entering a default judgment is a serious, substantive, and often complicated one, and it must be treated as such."  Indeed.

Proper application of the gatekeeper function should have precluded any default judgment here.  For several reasons.

First, as noted above, Grappo's complaint does not set forth the identity or relationship of any of the people or entities named in the caption.  Indeed, he does not even indicate his own identity, or his claimed relationship with any of the defendants.

Second, the complaint does not comply with the California Rules of Court.  For example, rule 2.112 provides that each cause of action should be headed so as to identify briefly the nature of the claim asserted; and if there is more than one, it should identify the defendant or defendants against whom the cause of action is being asserted.  As the leading practical treatise advises, failure to comply with rule 2.112 presumably renders a complaint subject to a motion to strike (Code of Civ. Proc., § 436), or a special demurrer for uncertainty.  (Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2016, ¶ 6:113, pp. 6-33–6-34.)

Third, to the extent that any wrong is attempted to be asserted, they appear to be wrongs against the Michael A. Grappo 2003 Trust.  Grappo is not the proper plaintiff. (Code Civ. Proc. § 369; *Portico Management Group, LLC v. Harrison* (2011) 202 Cal.App.4th 464, 473.)

18

Fourth, and most fundamentally, Grappo's complaint does not state a claim for any loss of property. That is, reading Grappo's complaint as liberally as one can in his favor, the only possible cause of action that deals with any "property" allegedly lost is the eighth. That cause of action is styled "Gross Negligence and Defalcation." And the only reference to property is in the second of its two paragraphs, that quoted above: "9. Defendant McKean further removed or authorized the removal of items of personal property belonging to some of the heirs of the Michael A. Grappo 2003 Trust without prior notification to said property owners and without ever notifying said property owners of the disposal of these items of personal property which were being stored at the Piedmont property site." It does not state a cause of action.

We know of no cause of action for "defalcation." And " 'California does not recognize a distinct cause of action for "gross negligence" independent of a statutory basis.' " (*Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 856, fn. 18.) Moreover, "gross negligence" requires a " ' " 'want of even scant care' ' " or " ' "an extreme departure from the ordinary standard of conduct.' " ' " (*City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 754.) Certainly, that is not alleged here.

But even if Grappo's claim were for ordinary negligence, it would fail, as such a claim requires a legal duty to use due care and breach of that duty. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917; *Rowland v. Christian* (1968) 69 Cal.2d 108, 112.) Neither is alleged here.

If the complaint does not state a cause of action or the allegations do not support a claim for relief, a default judgment is erroneous and "cannot stand." (*Kim, supra,* 201 Cal.App.4th at p. 282 [default judgment reversed where complaint failed to state cognizable claims against defendants]; *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 829; *Vasey v. California Dance Co.* (1977) 70 Cal.App.3d 742, 749 [defendants who defaulted did not admit corporation was their alter ego where complaint was insufficient in pleading elements to justify disregard of corporate entity].) As *Falahati* succinctly put it, "It is well established a default judgment cannot properly be based on a complaint which fails to state a cause of action against the party defaulted because, as Witkin

19

explains, '[a] defendant who fails to answer admits only facts that are well pleaded.' Because the third amended complaint alleged no facts with respect to Kondo, there were no facts for Kondo to admit." (*Falahati v. Kondo, supra,* 127 Cal.App.4th at p. 829, fn. omitted.) And so, *Falahati* went on to hold, "The default judgment in the present case is void for two reasons. The complaint contained no factual allegations with respect to Kondo; therefore it failed to apprise him of the nature of plaintiffs' demand against him. In addition, the complaint does not specify the amount of damages plaintiffs seek from Kondo . . . ." (*Falahati, supra,* at p. 830, fn. omitted, citing *Christerson v. French* (1919) 180 Cal. 523, 525–526.)

Were all that not enough, counsel for Grappo admitted at oral argument that Grappo's complaint did not state a claim.

Finally, the default judgment is void for the additional reason that the $60,000 amount awarded to Grappo is not supported by the complaint. As quoted, the only property referred to is in the eighth cause of action: "items of personal property belonging to *some of the heirs*" of the trust. (Italics added.) The exhibit Grappo attached to the request, an e-mail from attorney Habegger, refers to his understanding that his office had given Grappo "and other family members" a long opportunity to remove the items. According to the proofs of service, there are apparently six other Grappos spread throughout California and Oregon—apparently the other "heirs" or "family members" with some interest in the property.

## DISPOSITION

The order is affirmed. Cambra shall recover her costs on appeal.

20

_____

Richman, Acting P.J.


I concur:


_____

Miller, J.


A147522; *Grappo v. McMills*


21

Stewart, J., dissenting,

There comes a time when the policy favoring relief from defaults gives way to the public policy favoring the finality of judgments. (*Rappleyea v. Campbell* (1994) 8 Cal. 4th 975, 982 (*Rappleyea*).) As this court has stated, "[o]nce relief is no longer available under section 473, the public policy in favor of finality of judgments predominates, and the power to set aside valid final judgments . . . should be exercised only when exceptional circumstances require that the consequences of res judicata be denied." (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1071.) It is the majority's elevation of the former policy over the latter, with the result that a default judgment that is final is nonetheless virtually always open to challenge, that leads me to dissent.

Here, the majority affirms a trial court order vacating a final judgment under Code of Civil Procedure section 473, subdivision (d)[1] at the request of a party who learned of it before it was final and thus could have applied for relief under section 473, subdivision (b) based on a showing of "mistake, inadvertence, surprise, or excusable neglect."[2] Had the Trustee timely made such an application, she would have had the benefit of the law's strong policy in favor of relieving parties from default and allowing them their day in court that the majority wields strenuously in defense of what the trial court did. But the Trustee made no such application. Instead, she waited until six months after she learned of the judgment, at which point ten months had elapsed since the judgment was entered, to move to set the judgment aside, and she did so without explanation or evidence. Because the judgment had in the meanwhile become final and the time for seeking relief under section 473, subdivision (b) had passed, the policy favoring relief from defaults had given way to the equally important policy the majority ignores: the policy of "leaving judgments final" or, stated otherwise, the law's "distaste

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] An application for relief under section 473, subdivision (b) must be accompanied by "a copy of the answer or other pleading proposed to be filed" and be made "within a reasonable time, in no case exceeding six months, after the judgment . . . was taken."

1

for the forfeiture of a judgment, which is vested personal property." (*Rappleyea*, *supra*, 8 Cal.4th at p. 982.)

In affirming this judgment, the majority goes to great lengths to reach the result that it does. It presents a selective and one-sided recitation of the record, omitting many key facts. In particular, it fails to mention that the Trustee admits she was aware of the default judgment before it was final but sat on her hands until months after it became final when the time for making a motion under section 473, subdivision (b) had lapsed. Nor, therefore, does it discuss the fact that by the time the Trustee moved to set it aside, relief under section 473, subdivision (b) was no longer available. The majority also fails to mention that the complaint was filed and the decedent, McKean, was served with the summons almost a year before he died and that his default was taken five months before he died, and there is no evidence as to why he failed to answer the complaint or seek relief from the default on his own behalf in the first instance.

The majority also takes a detour from the course charted by the parties to discuss arguments about defects it finds in Grappo's underlying complaint and a challenge to his standing. The parties did not raise these arguments, and for good reason. The majority's standing argument is simply wrong, and its argument that the complaint fails to state a cause of action provides no basis for a collateral attack on the judgment. In chiding the trial court for failing to fulfill its role as "gatekeeper," the majority oversteps its own role, which is one of decision-maker, not advocate. Doing so leads to errors that could have been avoided.

In addressing the arguments the parties did make, the majority ignores decades of settled law—including decisions by our highest court and this one—holding that a judgment entered for or against a dead person is not void but merely voidable. It suggests that this body of law does not apply to judgments obtained by default but provides no authority or rationale for this proposition.

Finally, the majority assumes prejudice based solely on the fact that McKean died before the default judgment was entered, despite the lack of any actual evidence that a different outcome would even potentially have resulted if the Trustee had been

2

substituted shortly after his death. I cannot agree, especially given the Trustee's failure to take any steps to protect her rights until months after she became aware of the default judgment.

In my view, the failure to substitute the Trustee for the deceased McKean rendered the default judgment here voidable, not void; and it could not be set aside on the ground the defendant had died before its entry by a motion filed more than six months (indeed, ten months) after it was entered. For that reason alone, the order vacating this final judgment should be reversed. In addition, though, even if a final judgment could be attacked at any time on the ground the Trustee here asserted, as the majority implicitly holds, the motion still should have been denied because the Trustee did not show any prejudice. The majority's conclusion that there was prejudice, like the trial court's, is based on speculation. In short, the presumption of correctness we accord this trial court ruling is overcome by two clear legal errors appearing in this record, either one of which alone is reason to reverse.

## BACKGROUND

Because the majority's discussion omits important facts, and focuses on others that in my view are irrelevant, I briefly restate the factual background as I see it.

In November 2013, Grappo commenced this action in propria persona alleging misappropriation of funds in the administration of the Michael A. Grappo 2003 Trust. He prayed for $60,000 in specific damages, various allegedly excessive fees in an unspecified amount and punitive damages. One defendant was Kenneth A. McKean, whom the majority asserts is "not identified in the complaint—and who from all indications had no relationship with Grappo." (Maj. opn., p. 1.) But, while the complaint is not an exemplar, it plainly identifies McKean as a trustee, alleging: "Defendant McKean's duty *as a trustee* was to either make money for said trust and certainly not to cost it's [*sic*] heirs part of their inheritance by causing said trust to lose money." (Italics added.) The majority also faults the complaint because Grappo "does not even identify himself, or describe any claimed connection or relationship with any of the defendants." (Maj. opn., p. 2; see also *id.*, p. 18.) Even apart from the obvious implication from the

3

family name he shares with the trustor that Grappo is one of the "heirs" injured by the defendants' alleged malfeasance, Grappo identifies himself as an "heir" to the trust both in the body of the complaint and its signature block. The Trustee could find no fault with this complaint, criticizing it neither below nor on appeal. In her respondent's brief she states as obvious that which the majority finds inscrutable: Grappo "filed the trial court action in his capacity as a beneficiary of the Grappo Trust."[3]

McKean was personally served with process in December 2013 but entered no appearance, and it was not until six months later, on June 30, 2014, that Grappo requested entry of default against him. The clerk entered default the following day, which the majority inexplicably asserts was done "without warning to anyone." (Maj. opn., p. 1.) As it acknowledges elsewhere however (Maj. opn., p. 4), Grappo had previously served McKean with the request for entry of default by mail (on June 19, 2014). He also served two law firms.

Thereafter, on November 12, 2014, Grappo filed a "written application" requesting the entry of a default judgment against McKean. The court denied the application on various grounds. It also advised Grappo that, under section 580, the court would be limited by the complaint's allegations to an award of $60,000 in damages, and directed Grappo to use the required Judicial Council forms.

On November 23, 2014, a year after the complaint was filed and roughly four and a half months after McKean's default had been taken, McKean died.

A short time later, on December 8, 2014, Grappo filed a request for entry of a default judgment against McKean using the required form. In the "Declaration of mailing" portion of the form, Grappo checked a box indicating the request was *not* mailed to McKean and inserted an explanatory note stating, "Defendant Ken McKean and Ken McKean as owner of McKean & McMills, LP is now deceased and could not be served."

---

[3] The Trustee also tells us in her brief that McKean was the general partner of the entity that served as Trustee and, indeed, Grappo's "primary contact."

4

As the majority notes, no prove-up hearing was held. None was required. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2016) ¶¶ 5:202, 5:208, pp. 5-53 to 5-54; § 585, subd. (d).)

On December 22, 2014, the court signed and entered a judgment of default against McKean in the amount of $60,750, consisting of $60,000 in principal damages and $750 in costs.[4] Notice of its entry was served only on Grappo.

On May 6, 2015, about six weeks before the judgment would become final, Grappo filed a written creditor's claim concerning the judgment in trust administration proceedings for McKean's estate. The Trustee was represented by counsel in that proceeding, and Grappo's claim specified the date the judgment had been entered, some four and a half months earlier. Upon rejection of the claim, Grappo sued the Trustee, seeking payment of the judgment. Below, the Trustee argued she learned of the default judgment "no earlier" than the date Grappo filed the creditor's claim.[5]

One and a half months after the Trustee learned about the judgment, it became final, on June 22, 2015, when the 180-day deadline to appeal it expired. (See Cal. Rules of Court, rule 8.104(a)(1)(C); § 12a, subd. (a).)

Subsequently, on October 29, 2015, nearly six months after the Trustee learned of the default judgment and more than 10 months after the judgment was entered, the Trustee finally took action. She filed a "Notice of Intention to Move to Set Aside and Vacate a Judgment and to Enter Another and Different Judgment," citing section 663, which was plainly inapplicable,[6] and stating the motion would request the default

_____

[4] As the majority notes (Maj. opn., pp. 4, 6), Grappo took the default and procured entry of a default judgment in the same amount against McKean's partnership, McKean & McMills, L.P., too, but the trial court declined to set that judgment aside and it is not at issue in this appeal.

[5] The Trustee's assertion, made in the papers and orally at the hearing, was based only on the creditor's claim. The Trustee filed no declaration, and there is no evidence that she did not learn of the default proceedings earlier.

[6] Section 663 authorizes post-trial relief from a judgment "based upon a decision by the court, or the special verdict of a jury," and entry of "another and different judgment" and "may only be brought when 'the trial judge draws an incorrect legal

5

judgment against McKean be vacated. The stated basis for the motion was that McKean was deceased, yet Grappo sought "to exploit [his] death by seeking enforcement of the Judgment [of] Default against Mr. McKean's Trust estate in a separate action without first having substituted Mr. McKean's personal representative in this action and litigating against that personal representative to judgment, as [section] 377.41 requires." The Trustee argued the judgment was "void" due to McKean's death, and the motion was timely under section 473.5, which governs motions to set aside defaults or default judgments "[w]hen service of a summons has not resulted in actual notice to a party in time to defend the action." (§ 473.5, subd. (a).)

Grappo, at this point represented by counsel, opposed the motion by responding to the only two statutory bases invoked, arguing the motion was untimely under section 663 and section 473.5 did not apply because McKean received actual notice of the action well before he died and in time to defend. Grappo also argued there was no prejudice to the Trustee from not having been substituted in as a party, since McKean was alive when his default was taken and there was nothing the Trustee could have done later to avert entry of the default judgment.[7]

For the first time in her reply, the Trustee invoked section 473, subdivision (d), arguing there is no deadline to move to set aside a void judgment under section 473, subdivision (d). Section 473, subdivision (d) authorizes a court, on noticed motion, to "set aside any void judgment." The reply also alluded to the court's inherent equitable power to vacate a default judgment and asserted that entry of the default judgment had resulted from extrinsic fraud and mistake. However, other than copies of pleadings from this case and related proceedings, the Trustee submitted no evidence in support of her

conclusion or renders an erroneous judgment upon the facts found by it to exist.' "
(§ 663; *Payne v. Rader* (2008) 167 Cal.App.4th 1569, 1574, italics omitted.) It does not apply to default judgments. (See *Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1207, fn. 5; *First Nat. Bank v. Turnbull* (1950) 99 Cal.App.2d 764, 766.)

[7] The majority criticizes the brevity of this written opposition ("all of three pages") (Maj. opn., p. 7), but the Trustee's substantive argument was equally brief and she invoked two inapplicable statutes.

6

motion. Thus there was no showing that the default judgment was the product of any fraud or mistake by McKean, the Trustee or her counsel, or that there was prejudice, i.e., that the Trustee would have acted differently had she been substituted for McKean when he died or had a defense to the action.

Following a contested hearing, the trial court granted the motion to vacate the judgment. The court did not address the motion's timeliness, but recognized "as a general proposition" that a judgment rendered for or against a decedent "is *not* void, and . . . will be set aside only upon a showing of prejudice." (Italics added.) It concluded the Trustee "was not given notice of the existence of the default or the application for default judgment, and thus had no opportunity to seek relief from the default before Default Judgment was entered" and "the prejudice to the Trust is clear." The court then concluded that the Trustee "has made a sufficient showing that the judgment . . . *is* void." (Italics added.) This timely appeal followed.

## DISCUSSION

### I.

### *What This Appeal Is Not About*

In challenging the trial court's ruling, Grappo argues principally the Trustee waited too long to move to set aside the default judgment and in any event made an insufficient showing to justify that relief. I agree. Before setting out my reasoning, I address two subjects I believe lead the majority decidedly in the wrong direction.[8]

_____

[8] I agree with the majority that the other issue Grappo raises furnishes no ground for reversal (namely, that the Trustee raised section 473, subdivision (d) improperly below only in her reply papers). But I would not be so quick to condemn the quality of Grappo's appellate briefing. (Maj. opn., p. 9.) While Grappo's opening brief is no "model of appellate advocacy" (*ibid.*), his presentation of the facts is not nearly as one-sided as the majority describes it, and his reply brief states the arguments I believe should carry the day. And while Grappo's briefing does misstate that he didn't know of McKean's death when he requested entry of a default judgment (see *ibid.*), the most plausible explanation is oversight on his counsel's part, not intentional misrepresentation. The evidence that McKean died before judgment consists of one sentence in tiny print on Grappo's form request for default judgment, which he filed in propria persona two years ago. Apparently, nobody noticed this, including the Trustee's counsel who makes similar

7

First, I have already alluded to the majority's error in relying on the policy favoring liberal application of section 473 and the adjudication of cases on their merits. The majority cites no case calling for liberal application of the court's power to *vacate a final judgment under section 473, subdivision (d)*, which is the critical issue here. Most of the cases the majority cites calling for "section 473" to be liberally applied involve applications for discretionary relief under section 473, *subdivision (b)*, a provision not at issue here. None involves a motion to vacate a final judgment. (See *Zamora v. Clayborn Contracting Group, Inc.,* (2002) 28 Cal.4th 249, 258; *Au-Yang v. Barton* (1999) 21 Cal.4th 958, 961; *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 477, fn. 3; *Elston v. City of Turlock* (1985) 38 Cal.3d 227 (*Elston*)[9]; *Fasuyi v. Permatex, Inc.* (2008) 167 Cal.App.4th 681, 689, 694–703; *McCormick v. Board of Supervisors* (1988) 198 Cal.App.3d 352, 356–357, 359–360; see also *Rappleyea*, *supra*, 8 Cal.4th at p. 982 [motion to set aside entry of default filed and ruled on before judgment was entered].) Furthermore, I agree with the majority that *Rappleyea* is pertinent (see Maj. opn.,

misstatements in her own brief by accusing Grappo of "appl[ying] for and obtain[ing] a default judgment . . . without notifying the trial court that Mr. McKean had died." At oral argument, the Trustee's counsel even stated it was "just as likely if not more likely" that the trial court didn't notice this either when entering the default judgment. The fact that Grappo *was* aware of McKean's death and notified the trial court of it in his request for entry of default judgment surfaced during this court's review of the record.

In any event, to the extent the majority has concerns about the quality of the parties' briefing, I'm puzzled as to why the Trustee emerges free from criticism. It was the Trustee, for example, who moved in the trial court under section 663, yet on appeal disavows that statute, arguing it was "immaterial" to the trial court's ruling. While true, that is only because the Trustee managed eventually to cite the proper statute (section 473, subdivision (d)) in her reply papers, after relying on two plainly inapplicable statutes in her opening papers. Indeed, at oral argument the Trustee's counsel candidly admitted that "we threw all the statutes at it" in the trial court papers.

[9] The majority quotes *Elston* at some length but omits the opening sentence of *Elston*'s analysis which illuminates it involved relief under section 473, subdivision (b): "Section 473 permits the trial court to 'relieve a party . . . from a judgment, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise or excusable neglect.' " (*Elston*, *supra*, 38 Cal.3d at pp. 232–233; *see also id*. at p. 233, fn. 4 [quoting the text of section 473, subdivision (b)].)

8

pp. 14–15), but the majority ignores what our Supreme Court actually said in that case about the near-sanctity of final judgments: " '[W]hen relief under section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court. *Beyond this period there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted.*' " (*Rappleyea*, at pp. 981–982, italics added.) Presumably my colleagues would agree that if an untimely appeal were taken from a default judgment no amount of liberality could save it. (See, e.g., *Shapiro v. Clark* (2008) 164 Cal.App.4th 1128, 1137 [appeal held untimely].) Final is final, and liberality has its limits. In short, having cited authorities that do not apply, it is the majority that has approached this case in a manner "contrary to the role of any court dealing with defaults . . . and contrary to public policy." (Maj. opn., p. 15, fn. 5.)

The second overarching flaw in the majority's analysis is its detour to address the merits of Grappo's complaint, and its haste to condemn it as failing to state any cognizable claim for relief and as supposedly reflecting Grappo's lack of standing. (Maj. opn., pp. 3, 12 fn. 4, 18–19.) Neither of the parties raised these issues below, and it was only at our direction that they addressed one of them in supplemental briefing on appeal (the complaint's sufficiency). I would not reach out to decide either question. (See, e.g., *Harnedy v. Whitty* (2003) 110 Cal.App.4th 1333, 1338–1339; *City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 205.) Given that the majority has done so, however, I disagree that "the judgment here is void because the complaint does not support the default judgment entered for Grappo—indeed, any default judgment at all." (Maj. opn., p. 12, fn. 4.) To the extent it suggests the trial court's ruling can be affirmed on grounds of lack of standing or failure to state a claim, I disagree.[10]

---

[10] I have no disagreement that trial courts must carefully and properly discharge their gatekeeping role when asked to enter a judgment by default. But here, the trial court did so, rejecting Grappo's first request for entry of a default judgment, directing him to try again and limiting the judgment to an amount specifically alleged in the complaint.

A default judgment cannot be attacked *collaterally* on the ground the complaint fails to state a cause of action, and is valid as long as the complaint is "sufficient to apprise [the defendant] of the nature of the [plaintiff's] demand." (See *Molen v. Friedman* (1998) 64 Cal.App.4th 1149, 1156–1157; see also *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 539 ["If the complaint, though defective, ' "apprises the defendant of the nature of the plaintiff's demand," ' the entry of default is merely erroneous, not void"]; *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 99, 122.) *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, a decision the majority has cited (Maj. opn., pp. 19–20), makes this very point: "a default judgment is not necessarily void just because it is based on a complaint which fails to state a cause of action." (*Falahati*, at p. 830.) Rather, "[a] default judgment is void if the trial court lacked jurisdiction over the parties or the subject matter of the complaint or if the complaint failed to 'apprise[] the defendant of the nature of the plaintiff's demand,' or if the court granted relief which it had no power to grant including a default judgment which exceeds the amount demanded in the complaint."[11] (*Ibid.*, fn. omitted; accord, *Christerson v. French* (1919) 180 Cal. 523, 525.) Whatever the shortcomings of Grappo's complaint, it surely apprised McKean of the nature of the claim upon which the court entered judgment: he alleged personal property was unlawfully removed from the Piedmont property and McKean was the person who authorized its removal, and prayed for $60,000 in damages as a result. (See, e.g., *Molen*, at p. 1157 [complaint sufficient to apprise defendants that plaintiffs demanded damages for losses occasioned by breach of lease, specifically, "$23,795.34 plus $9,000 per month for 129 months"].) It therefore is immaterial that, as pointed out by my colleagues (Maj. opn., p. 20), Grappo's counsel acknowledged at oral argument (commendably, in my view) the complaint does not state a claim. For much the same reason, I also disagree with the majority's conclusion that the judgment is void because "the $60,000 amount awarded to Grappo is not supported by the complaint." (*Id.*, p. 20.)

---

[11] Other cases cited by the majority involve direct appeals from a default judgment and are not on point. (See *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267; *Rose v. Lawton* (1963) 215 Cal.App.2d 18.)

10

The $60,000 damages award matches the complaint's demand to the penny. A default judgment is void if the damages award *exceeds* the amount of damages specified in the complaint, because the court lacks jurisdiction to award anything higher. (See *David S. Karton, A Law Corp. v. Dougherty* (2009) 171 Cal.App.4th 133, 150; *Falahati*, at p. 830.)

As for Grappo's standing, I read the law quite differently than the majority. While " '[a]s a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf,' . . . this general rule does not extend to an action alleging the trustee itself breached a duty. '[A] trust beneficiary can bring a proceeding against a trustee for breach of trust.' " (*Estate of Giraldin* (2012) 55 Cal.4th 1058, 1075.) The majority cites no case to the contrary. What is more, the majority overlooks this court's own decision in *Harnedy v. Whitty*, *supra*, 110 Cal.App.4th 1333, which analyzed the case law at length and recognized that beneficiaries have standing to sue a trustee for the trustee's own malfeasance. (See *id.* at pp. 1338–1342.) We could not have put it more plainly: "when the claim being asserted rests in whole or in part on alleged breaches of trust by the trustee, a beneficiary has standing to pursue such a claim against either (1) the trustee directly, (2) the trustee *and* third parties participating in or benefiting from his, her or its breach of trust, or (3) such third parties alone." (*Id.* at pp. 1341–1342.) We explained that "[*o*]*nly* in circumstances . . . [in which] no misfeasance or breach of trust by the trustee is asserted and the beneficiary is effectively seeking to step into the shoes of the trustee and enforce the trust agreement directly, does the beneficiary lack standing." (*Id.* at p. 1342; see also *id*. at p. 1342, fn. 2.) Thus, under these authorities the majority nowhere acknowledges, it is plain that Grappo, a trust beneficiary, has standing to sue McKean for breaches of duty McKean committed while acting as a trustee— including allegedly disposing of personal property being stored at the Piedmont property that was allegedly under McKean's management and supervision.

In short, I cannot sustain the trial court's ruling on either of the grounds that the majority has independently raised.

I turn now to the questions that the parties have raised on appeal.

11

## II.

### *The Trustee's Motion Was Timely Under Section 473, Subdivision (d) Only if the Default Judgment Was Void.*

The majority holds the trial court properly vacated this judgment under section 473, subdivision (d). (Maj. opn., p. 12.) That provision states, "The court . . . may, on motion of either party after notice to the other party, set aside any void judgment or order." (§ 473, subd. (d).) This provision "does not place any time limit on bringing such a motion." (*Tearlach Resources Limited v. Western States Internat., Inc.* (2013) 219 Cal.App.4th 773, 779.) By contrast, a judgment that is not void but merely voidable may not be set aside beyond the six-month time limit of section 473, subdivision (b). (See *Lee v. An* (2008) 168 Cal.App.4th 558, 563 (*Lee*); accord, *Torjesen v. Mansdorf* (2016) 1 Cal.App.5th 111, 118 (*Torjesen*); see also § 473, subd. (b).) After six months, once discretionary relief from a default judgment under section 473, subdivision (b) is no longer available, as already noted, the public policy favoring finality of judgments comes into play. (See *Rappleyea*, *supra*, 8 Cal.4th at pp. 981–982.) " 'A motion to vacate a judgment, made after the expiration of the six-month period allowed in section 473 of the Code of Civil Procedure . . . is governed by the rules applicable to collateral attack. [Citations.] In the absence of extrinsic fraud or mistake [citation] a judgment so attacked cannot be set aside unless it is void . . . .' "[12] (*Torjesen*, at p. 116; accord, *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495–496.)

In short, the trial court's power to set aside this final judgment under section 473, subdivision (d) turns on whether the judgment was void, or merely voidable, due to McKean's death, a question we review de novo. (See *Rodriguez v. Cho* (2015) 236 Cal.App.4th 742, 752.) The majority doesn't expressly hold that the judgment here

---

[12] To be clear, extrinsic fraud or mistake constitutes a separate basis for collaterally attacking a final judgment (whether or not the judgment is argued to be void), pursuant to a court's equitable powers. (See generally 8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 215, p. 823, et seq.) But *Rappleyea* instructs that equitable relief from a final judgment "may be given only in exceptional circumstances." (*Rappleyea*, *supra*, 8 Cal.4th at p. 981.) I discuss the unavailability of potential equitable relief from this judgment, *post*.

was void, but that is the necessary implication of its decision.  It is an implication with which I cannot agree.

## III.

### *The Default Judgment Was Not Absolutely Void.*

*Lee v. An* sets out a helpful framework for understanding whether a judgment is void or merely voidable.  *Lee* explained, "The distinction between void and voidable orders is frequently framed in terms of the court's jurisdiction.  'Essentially, jurisdictional errors are of two types.  "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." [Citation.]  When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and "thus vulnerable to direct or collateral attack at any time." ' [Citations.]  For example, if a defendant is not validly served with a summons and complaint, the court lacks personal jurisdiction and a default judgment in such action is subject to being set aside as void." (*Lee*, *supra*, 168 Cal.App.4th at pp. 563–564.)  By contrast, " '[w]hen a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.]  That is, its act or judgment is valid until it is set aside . . . .' " (*Torjesen*, *supra*, 1 Cal.App.5th at p. 117.)  Errors that " 'are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final . . . .' " (*Ibid*.; accord, *Lee*, at pp. 565–566 [" 'a party seeking to set aside a voidable judgment or order must act to set aside the order or judgment before the matter becomes final' "].)

This court recognized in *Woolley v. Seijo* (1964) 224 Cal.App.2d 615 (*Woolley*), another of our cases the majority does not discuss, that a judgment rendered against a defendant after his death but before substitution of his personal representative is not void. (*Id*. at p. 620.)  The contrary contention is "meritless," we said, because "[i]t is settled that a judgment for or against a dead person is void only if the plaintiff or defendant was dead before the action was begun.  [Citation.]  It is equally well settled that where a party dies subsequent to the commencement of the action and after the court has acquired

13

personal jurisdiction over him, the entry of judgment against him is a 'mere irregularity' which renders the judgment voidable only and therefore immune from collateral attack." (*Id*. at pp. 620–621; accord, *Collison v. Thomas* (1961) 55 Cal.2d 490, 495–496; see also, e.g., *Machado v. Flores* (1946) 75 Cal.App.2d 759, 762 (*Machado*) ["[T]he California courts are not committed to the position advanced by appellants that the death of a party, *ipso facto*, renders absolutely void, a judgment for or against such party"].)

Witkin, on which the majority otherwise relies (Maj. opn., pp. 11–12), concurs: "Death occurring during the trial, and before verdict or submission for decision, *generally results in a voidable, not void, judgment.* The executor or administrator should be substituted as a party, but failure to substitute is merely error, not a jurisdictional defect, and the judgment is not subject to collateral attack." (7 Witkin, *supra*, Judgment, § 4, pp. 549–550, italics added; see also 4 Witkin, *supra*, Pleading, § 259, p. 335 ["Failure to substitute, however, is merely a procedural irregularity, not an act in excess of jurisdiction"]; 2 Witkin, *supra*, Jurisdiction, § 317, p. 929 ["This technical lapse . . . *does not render the judgment void* and subject to collateral attack. The courts frequently describe it as a 'mere irregularity,' *which renders the judgment 'voidable only'* "], italics added.)

The principle that a judgment is not void but merely voidable where a party has died derives from California Supreme Court authority dating back more than a century. (See *Todhunter v. Klemmer* (1901) 134 Cal. 60, 63 (*Todhunter*) ["the death of a party pending suit does not oust the jurisdiction of the court, and hence . . . the judgment is voidable only, not void"]; *Phelan v. Tyler* (1883) 64 Cal. 82, 82–83 (*Phelan*) [" 'in such cases, the judgment is simply erroneous, but not void . . . because the court having obtained jurisdiction over the party in his lifetime, is thereby empowered to proceed with the action to final judgment' "].) Although a court *should* refrain from exercising its jurisdiction over a party who dies, its failure to do so is merely an error that may be corrected, because the court's jurisdiction is not suspended without a substitution of the decedent's personal representative. (See *Phelan*, at pp. 82–83.) " '[A] judgment against a person dead at its rendition *is valid* until reversed or set aside by some competent

14

judicial authority, and . . . cannot be collaterally attacked . . . ." (*Tyrrell v. Baldwin* (1885) 67 Cal. 1, 5 (*Tyrrell*), italics added.)

The results in many cases reflect this rule. For example, *Tyrrell* held a judgment entered against a defendant in a dispute over real property ownership was not void even though the defendant died before trial, and was admissible in a later action brought by the decedent's grantees concerning the same subject matter. (See *Tyrrell*, *supra*, 67 Cal. at pp. 4–5.) *Woolley* held a federal judgment entered jointly and severally against a defendant who died before its rendition was enforceable against his estate in an independent state action; it could not be collaterally attacked in the latter action. (See *Woolley*, *supra*, 224 Cal.App.2d at pp. 620–621.) *Todhunter* upheld a judgment enforcing an appeal bond, holding the death of one of the plaintiffs before entry of judgment in the underlying suit did not render either the judgment or the bond void and unenforceable, but merely voidable. (See *Todhunter*, *supra*, 134 Cal. at pp. 62–63.) And *Phelan* held the death of a party pending an appeal did not render the Supreme Court's subsequent decision and judgment in the case void even though no personal representative was ever substituted into the case, and the judgment had preclusive effect on a later action. (See *Phelan*, *supra*, 64 Cal. at pp. 82–83.)

The majority's suggestion that a different rule applies to default judgments is not supported by any authority of which I am aware, and at least one Court of Appeal decision has permitted a default judgment to be enforced though entered in the name of a dead person. *Machado* affirmed a judgment of nonsuit in an equitable action to enjoin enforcement of a default judgment entered in the name of a plaintiff who had died after filing the action but before summons was served, and whose representative was not substituted in until after the judgment was entered. (See *Machado*, *supra*, 75 Cal.App.2d at pp. 760–761, 763.) The court held the judgment wasn't void, and its enforcement could only be prohibited on an equitable basis and no such basis had been shown. (*Id*. at pp. 762–763.)

Against this weight of authority, the majority cites a number of decisions describing judgments entered in the name of a dead party as "void." (See *Johnson v.*

*Simonelli* (1991) 231 Cal.App.3d 105, 107, fn. 1; *Herring v. Peterson* (1981) 116 Cal.App.3d 608, 612; *Estate of Edwards* (1978) 82 Cal.App.3d 885, 893; *Estate of Parsell* (1923) 190 Cal. 454, 456.) Every one of those cases involved a direct attack on a non-final judgment, made by way of timely appeal (see *Johnson*, at p. 107 [appeal from summary judgment]; *Herring*, at p. 610 [appeal from order of dismissal]; *Estate of Edwards*, at p. 887 [appeal from judgment]) or a timely post-judgment motion filed within six months after entry of judgment (see *Estate of Parsell*, at p. 455 [assuming such fact]). While the courts described those voidable judgments as "void," the distinction was immaterial and not at issue, and so the language was dictum. (See *Torjesen*, *supra*, 1 Cal.App.5th at p. 118; see also *Hogan v. Superior Court* (1925) 74 Cal.App. 704, 709 [rejecting "contention that under all circumstances a judgment is void where it is rendered for or against a deceased party," and observing "*Estate of Parsell* . . . does not so hold"].) None of these authorities authorize a trial court to vacate a *final* judgment based solely on the judgment having been entered in the name of a deceased party.[13]

The majority also asserts that "[w]e are not aware of any void versus voidable case that deals with a default judgment taken against a dead person," and states that it "might be inclined to hold in that situation that the judgment is void" though it declines to expressly so hold. (Maj. opn., p. 12.) But the majority does not explain why a different "void/voidable" rule should apply to a default judgment than to all other judgments entered in the name of a dead person. The court is not divested of jurisdiction to proceed when a defendant dies after the court has already acquired personal jurisdiction over the defendant, which is why such a judgment is voidable and not void. (*Woolley*, *supra*,

---

[13] As the majority notes (Maj. opn., pp. 11–12), language in some of these cases describing judgments as "void" derives from *Judson v. Love* (1868) 35 Cal. 463, where the Supreme Court described proceedings conducted after a defendant had died as "irregular and void" (*id*. at p. 467) and "ineffectual." (*Id*. at p. 470.) But *Judson* also didn't involve a collateral attack on a final judgment; it, too, was a direct appeal from a judgment entered in the name of a deceased defendant who had died before entry of judgment. (See *id*. at pp. 466–467.) Indeed, the judgment in that case was valid, and left to stand (because the defendant had died after the verdict had been rendered). (See *id*. at p. 467.)

16

224 Cal.App.2d at pp. 620–621; *Collison v. Thomas*, *supra*, 55 Cal.2d at pp. 495–496.) This is true whether the judgment is issued after litigation on the merits or obtained by default. In my view, there is no reason a court's error in entering a judgment on the merits against a party who has died should be immune from collateral attack but the same error should render a default judgment absolutely void, open to attack at any time even after it has become final. And *Rappleyea* strongly suggests otherwise. (*Rappleyea*, *supra*, 8 Cal.4th at pp. 981–982.)

In sum, this judgment was not void but merely voidable, and so the Trustee should have moved to set it aside within six months of its entry, before it became final and immune to collateral attack. Indeed, the Trustee knew about the judgment before the six months lapsed yet sat on her rights. The Trustee's belated motion should have been denied. (See *Torjesen*, *supra*, 1 Cal.App.5th at p. 118; *Lee*, *supra*, 168 Cal.App.4th at p. 561.)

**IV.**

***The Trial Court Erred in Vacating the Judgment Because There Is No Substantial Evidence the Trustee Was Prejudiced.***

The trial court's ruling in this case can and should be reversed solely on the ground that the Trustee's motion was untimely, and I could stop there. But I also disagree with the majority that the judgment can be affirmed "on the basis on which [the trial court] ruled, applying *Sacks* [*v. FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950], [and] finding prejudice." (Maj. opn., p. 12.) Rather, as I see it, even if the majority's implicit holding is correct—that there is *no* time limit for challenging a default judgment where the defendant died between the taking of his default and the entry of judgment on the default—the Trustee demonstrated no prejudice that would justify setting aside the judgment here.

The majority posits that "perhaps using the *Sacks* analysis in the default situation . . . death is per se prejudice" (Maj. opn., p. 12), by which I take the majority to mean "renders a judgment void." But that cannot be true, as just demonstrated by the many cases rejecting collateral attacks on judgments entered in the name of a party who

17

died. (See *Tyrrell*, *supra*, 67 Cal. at pp. 4–5; *Todhunter*, *supra*, 134 Cal. at pp. 62–63; *Phelan*, *supra*, 64 Cal. at pp. 82–83; *Woolley*, *supra*, 224 Cal.App.2d at pp. 620–621; *Machado*, *supra*, 75 Cal.App.2d at pp. 760–763.) A further flaw in the majority's hypothesis—that *Sacks* authorizes a *collateral* attack on a judgment against a dead person where a showing of prejudice is made—is that like the other cases the majority cites, *Sacks*, too, was a *direct* attack on the judgment, specifically, a timely appeal from a judgment entered after a grant of summary judgment. (See *Sacks*, *supra*, 7 Cal.App.4th at pp. 953–956.)

Setting aside the timing issues already discussed, I do agree that no matter the context or timing, a trial court's error in rendering judgment for or against a decedent may be redressed only if there was some kind of prejudice "because of lack of notice, lack of proper representation, or some other disadvantage." (See *Sacks*, *supra*, 7 Cal.App.4th at pp. 957–959, and authorities cited.) But I cannot agree with the majority there was any showing of prejudice here. Specifically, I do not agree that the Trustee's lack of opportunity to seek relief from the default before entry of the default judgment alone was enough.[14] (Maj. opn., p. 14.) The trouble with this conclusion is that it is premised on an assumption, and not on evidence, that the Trustee could and would have sought such relief—and obtained it—had she been substituted into the case before the judgment was entered.

As already mentioned, there is no evidence showing when the Trustee actually learned about the default. For all we know from the *record*, as opposed to the Trustee's assertion in her briefs, the Trustee could have learned of the action from McKean before he died or from his partner and co-defendant, McMills, after he died but before the default judgment was entered. I say this not with a "jaundiced eye" as my colleagues

---

[14] I also don't agree Grappo's counsel conceded this issue at the hearing. (Maj. opn., p. 14.) The majority is too quick to pounce on a passing comment ("right") that, in context, strikes me as little more than throat-clearing. Indeed, she later returned to her no prejudice argument, telling the trial court again that, "once the default was entered, then it had absolutely no effect whether he was alive or not when his default judgment was entered. And so that's when—by no prejudice—," to which the court responded, "Okay."

18

posit (Maj. opn., p. 16, fn. 5), but because of the lack of any evidence bearing on when the Trustee first learned of the default proceedings, let alone the lawsuit itself or its status. (Cf. *Pulte Homes Corp. v. Williams Mechanical, Inc.* (2016) 2 Cal.App.5th 267, 276–278 (*Pulte Homes* ) [discussing unexplained gaps in moving party's evidentiary showing, and reversing order granting motion to vacate default judgment as abuse of discretion].) Contrary to the majority's assertion, moreover, this is not a matter as to which we may presume the correctness of a factual inference. (Maj. opn., p. 16, fn. 5.) After all, even factual inferences must be supported by substantial evidence, yet there is nothing in this record from which any factual inference on this subject can be drawn. (See *Shapiro v. Board of Directors* (2005) 134 Cal.App.4th 170, 178–179; see also *State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610 [reciting familiar rule that " 'when two or more inferences can reasonably be deduced from the facts, a reviewing court lacks power to substitute its deductions for those of the trial court' "]; *Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651 ["[i]nferences may constitute substantial evidence, but they must be the product of logic and reason. Speculation or conjecture alone is not substantial evidence"].) Simply put, the record here is completely silent as to whether the Trustee knew anything about this lawsuit before Grappo filed his creditors' claim. The majority's assertion that she did not is not "inference," but conjecture.

But even accepting the unsupported assertion in the Trustee's brief below that she did not learn of the default before she was served with the creditor's claim, which was after the judgment was entered, she has still failed to show prejudice. That is because she made not the slightest showing that she had any substantive basis to challenge the entry of default. Nor did she provide any evidence that if relief from default had been granted there was any viable defense she could have raised on the merits. So no showing was made that any rights were lost. This might have been a different case had the Trustee introduced *evidence* that some potential basis for challenging the default was lost when the case proceeded to judgment in her absence. But given her tactical choice not to do so,

19

in my view the mere fact that a *judgment* was entered on the default is insufficient to establish prejudice.

Here, therefore, the trial court erred in vacating the judgment because there is no substantial evidence the Trustee was prejudiced. (See *Pulte Homes*, *supra*, 2 Cal.App.5th at p. 272 [substantial evidence review of order vacating default judgment].) As in *Sacks*, any error in entering the judgment against McKean rather than his personal representative "could at most be a technical one" that did not have "the slightest effect" on the results of this litigation. (*Sacks*, *supra*, 7 Cal.App.4th at p. 959.) This record does not show that "a different result would have been probable" had Grappo substituted the Trustee in for McKean before requesting entry of judgment. (§ 475; see also *Leavitt v. Gibson* (1931) 3 Cal.2d 90, 105–106 [affirming order denying executor's motion to vacate judgment entered nunc pro tunc against defendant who died during trial after evidence closed and post-trial briefing was nearly complete, and affirming judgment, because "Every privilege which could in the ordinary course of events inure to the benefit or advantage of the defendant had absolutely accrued before his demise"].)

Indeed, this record demonstrates the Trustee was not prejudiced. She admits she knew about this judgment four and a half months after it was entered, which was well in time to move to set it aside on the basis of mistake, inadvertence, surprise or excusable neglect (§ 473, subd. (b)). Yet she made no effort to do so. She did nothing at all to seek relief for a full six months after she learned of the judgment. So the timing of Grappo's request for entry of a default judgment could not be prejudicial. (Cf. *Rodriguez v. Henard* (2009) 174 Cal.App.4th 529, 537 [defendants not prejudiced by defect in mailing notice of application for entry of default judgment where they "learned of the default and default judgment in sufficient time to bring a motion for [discretionary] relief under section 473, and they did in fact file such a motion . . . [but] . . . failed to satisfy the trial court that any statutory basis upon which to set aside the default and default judgment existed"].)

# V.

## *Equitable Relief Was Unavailable.*

Here, the majority affirms the trial court's ruling solely on the ground the trial court properly applied section 473, subdivision (d), and does not consider whether the trial court's ruling could be sustained on the alternative ground that it was within the court's discretion to grant the Trustee equitable relief from the judgment due to extrinsic fraud or mistake. Because I disagree that relief was available under section 473, I briefly address the Trustee's argument that equitable relief was available too, a question reviewed for abuse of discretion. (See *Rappleyea*, *supra*, 8 Cal.4th at pp. 980–981 [considering whether trial court's ruling denying relief from default could be sustained as proper exercise of its equitable powers where court misapplied section 473]; see also *Pulte Holmes*, *supra*, 2 Cal.App.5th at pp. 272, 275–279.)

Here, the Trustee argues in passing that "[t]he default judgment resulted from extrinsic fraud and mistake," because Grappo "did not inform the trial court of Mr. McKean's . . . death before applying for the default judgment," which led the court to "mistakenly enter[] the default judgment on December 22, 2014." I would reject this argument, first, because Grappo *did* inform the court of McKean's death before entry of judgment, although the parties overlooked this below and in their appellate briefs. Equitable relief also could not have been granted, in any event, because the Trustee made no showing she had a meritorious defense, a showing required to set aside the judgment on equitable grounds. (See *Lee*, *supra*, 168 Cal.App.4th at p. 566; *Machado*, *supra*, 75 Cal.App.2d at p. 763.) Nor did she show diligence in seeking equitable relief, which also is required. (See *Pulte Holmes*, *supra*, 2 Cal.App.5th at pp. 277–278 [largely unexplained five-month delay held dilatory as a matter of law].) So in my view, for these separate reasons, the trial court would have abused its discretion had it vacated this judgment based on its inherent equitable powers.

## CONCLUSION

To be clear, it is not my position that it is proper to enter a default judgment (or any judgment, for that matter) in the name of a party who has died. Such a judgment is

erroneous.  But like many other types of trial court error, an error of this sort—rendering the judgment merely voidable not void—may be challenged only by certain means, and here those means were not utilized:  through a direct, timely attack within six months, or through a collateral attack on an equitable basis not proved here by this record.  I cannot agree with the rule adopted by the majority that renders such a judgment open to attack anytime and achieves finality in name only.  Nor do I concur that it is open to attack at all in the absence of evidence indicating the failure to substitute had any effect on the outcome of the case.  Nor, finally, do I reach either conclusion in derogation of our duty as a reviewing court to presume the correctness of the trial court's ruling (Maj. opn., p. 16, fn. 5); they are conclusions I reach based upon careful scrutiny of both this record and the law.  In my view, the trial court erred when it vacated this judgment.  Regardless of the majority's concerns for the potential substantive merits of this lawsuit, and regardless of the somewhat clumsy manner by which Grappo, a layperson, set about to request entry of this default judgment, this judgment did become final, and as such it constituted a vested property right that the majority, in affirming, far too lightly casts aside.  (See *Rappleyea*, *supra*, 8 Cal. 4th at p. 982.)

I would therefore reverse the grant of relief from the default judgment and reinstate the judgment.

_____
STEWART, J.

*Grappo v. McMills* (A147522)

Trial Court:    Alameda County Superior Court

Trial Judge:    Hon. Ronni B. MacLaren

Counsel:

Law Office of Kathleen Aberegg, Kathleen Aberegg, for Plaintiff and Appellant.

Hartog, Baer & Hand, Ryan J. Szczepanik, for Defendants and Respondents.