[Civ. No. 21150.   First Dist., Div. Two.   Feb. 13, 1964.]

ROGER S. WOOLLEY, Individually and as Trustee, etc., Plaintiff and Respondent, v. AUGUSTINA SEIJO, as Executrix, etc., Defendant and Appellant.

Rankin, Oneal, Luckhardt, Center, Longinotti & Ingram, Maurice J. Rankin and William A. Ingram for Defendant and Appellant.

Machado, Feeley & Machado and John H. Machado for Plaintiff and Respondent.

SHOEMAKER, P. J.—Juan Seijo and 16 other persons were joint venturers in the ownership and operation of the tuna fishing vessel "Sun King," which was the subject of a preferred maritime mortgage held by a bank. There were also claims against the vessel by creditors who had supplied goods or services for use in the joint venture.

On January 4, 1957, a libel for foreclosure of the mortgage was filed in the federal district court by the bank. All joint venturers were named respondents. Intervening libels were filed by creditors J. T. Siler, Star-Kist Foods, Inc., and San Diego Marine Construction Company.

On May 3, 1957, an interlocutory judgment of foreclosure was rendered, directing the foreclosure of the bank's mortgage and ordering the sale of the vessel. The judgment also established the validity, priority and amounts of all claims, and provided that if the net proceeds of the sale were insufficient to cover the bank's claim, a decree in personam for such deficiency would be entered in favor of the bank against all the respondents jointly and severally. The decree further provided that if the proceeds of the sale were insufficient to pay the amounts awarded the three interveners, a decree in personam for such deficiency would similarly be entered in their favor against the respondents. The court expressly re-

served its decision as to whether the decree in favor of the interveners would be against the respondents jointly, or jointly and severally.

The vessel was sold for $26,500, a sum insufficient to pay the claim of the bank in full or any amount on the interveners' claims. On May 10, 1957, counsel for respondents filed objections to the order confirming the sale. On May 24, 1957, libelant bank filed its proposed findings of fact, conclusions of law, and final decree. Objections thereto were filed by counsel for respondents on May 24, 1957. Thereafter, on June 23, 1957, Juan Seijo died and, on July 15, 1957, Augustina Seijo was appointed executrix of his estate.

After negotiations between counsel for respondents and interveners, the total amount of the interveners' claims was reduced from $19,672.59 to $11,270.65. On September 26, 1957, the district court signed findings of fact, conclusions of law, and final decree, providing that respondents were jointly and severally liable to the bank in the amount of $47,674.41, and to the interveners in the amount of $11,270.65. Counsel for all parties approved the findings of fact and conclusions of law as to form and substance and stipulated that the final decree be made and entered forthwith.

On June 23, 1958, respondents' counsel moved for an order substituting Augustina Seijo, executrix of the Seijo estate, as respondent in place of Seijo, and amending the judgment to so read. Augustina Seijo appeared specially in her capacity as executrix and contested the motion. The evidence pertaining to this matter established that publication of notice to the creditors of the Seijo estate had commenced July 30, 1957; that in September 1957, each of the three interveners executed written assignments of their judgment claims to one Roger S. Woolley; that in October 1957, Woolley presented his claim, based on said judgment, to the executrix of the Seijo estate; that in December 1957, the bank similarly presented its claim for the amount due under the judgment; that in March 1958, the executrix, by notice in writing, rejected the claims of Woolley and the bank; that in June 1958, the bank assigned its claim under the judgment to one Alva Hammel; that the motion to substitute the executrix of the Seijo estate and to so amend the final decree was joined in by all respondents other than Seijo and was consented to by Woolley and Hammel. Upon this evidence, the district court granted the motion and substituted the executrix in place of Seijo effective from and after the date of the latter's

death on June 23, 1957. The final decree was similarly amended to run against the executrix rather than against Seijo. From this order, the executrix took an appeal.

On October 15, 1959, the United States Court of Appeals affirmed the order appealed from. (*Seijo* v. *Hobbs* (9th Cir. 1959) 271 F. 2d 158.)[1] The court pointed out that the district court had determined all substantial questions upon the merits in the action prior to the death of Seijo. The only action taken by the district court subsequent thereto was the signing of the findings of fact, conclusions of law, and final decree, pursuant to which the claims of the interveners were reduced by over $8,000 and the decree was made to impose joint and several liability upon respondents. Under such circumstances, the order appealed from could not have prejudiced in any way the rights of Augustina Seijo as the executrix of the estate of Seijo and was a proper exercise of power under local Admiralty Rule 104. The court expressly refrained from deciding what effect the district court proceedings might have had on the parties' rights or liabilities under the California probate statutes, stating that these matters were for the California courts.

Meanwhile, on April 29, 1958, plaintiff Roger S. Woolley commenced the instant action in the Santa Clara County Superior Court against defendant Augustina Seijo, as executrix of the Seijo estate. The complaint alleged the recovery by the three above named interveners of the admiralty judgment running jointly and severally against Seijo and the other respondents. It was further alleged that on September 3, 1957, all three interveners had assigned to plaintiff, "as trustee," all of their right, title and interest in said judgment; that said judgment had not been paid and the whole thereof remained due and payable from Seijo and his estate; that although said judgment claim in the amount of $11,270.65 had been filed with the Seijo estate, it had been rejected by defendant executrix.

The defendant answered, asserting that the judgment sued upon was void by reason of the death of Seijo prior to its rendition. It was further alleged that the judgment had been satisfied and discharged by persons other than the plaintiff and that the action was barred by Probate Code, section 707.

The evidence produced at the trial established that Manuel and Joseph Marchant were joint venturers with Seijo and

[1]Except as otherwise specified, all of the facts thus far set forth have been taken from this opinion.

owned interests of 15 per cent and 10 per cent respectively in the vessel "Sun King"; that they were bound by the joint and several deficiency judgment in favor of the bank and the three interveners; that following the rendition of this judgment, the Marchant brothers paid the total amount of $67,538.97 to the bank and to the three interveners, satisfying entirely the judgment in favor of the interveners; and that they thereafter unsuccessfully attempted to obtain reimbursement from the other coowners. Since Seijo held a 10 per cent interest in the vessel, the Marchants estimated that his share of the indebtedness was in excess of $11,000. The Marchants therefore arranged to have the interveners' judgment for $11,270.65 assigned to Woolley, as trustee on behalf of the Marchants. When Woolley's claim in that amount was rejected by the Seijo estate, he then commenced the instant proceeding to enforce the assigned judgment against the estate.

Upon this evidence, the trial court found that Seijo's interest in the "Sun King" was 10 per cent and that his proportionate share in the total indebtedness of its coowners was over $11,270.65; that the Marchants had paid all of Seijo's share of the indebtedness and had received no reimbursement therefor; that the Marchants had secured an assignment of the interveners' judgment to Woolley in order to protect themselves and to secure the payments made by them on behalf of Seijo; that the judgment in favor of the interveners was not void; that the action was not barred by Probate Code, section 707; that Probate Code, section 709, had been complied with; that Woolley held the interveners' judgment as trustee for the Marchants, and in no other way. Judgment was entered in favor of plaintiff Woolley, as trustee for the Marchants, in the amount of $11,270.65 plus interest at the rate of 7 per cent from September 27, 1957. Defendant executrix appeals therefrom.

Appellant's first contention is that the trial court erred in enforcing the interveners' judgment against the Seijo estate because said judgment was void under the California law by virtue of having been rendered after Seijo's death and before his executrix had been substituted as a party to the action. This contention is meritless. ■ It is settled that a judgment for or against a dead person is void only if the plaintiff or defendant was dead before the action was begun. (1 Witkin, Cal. Procedure, § 137, p. 399.) ■ It is equally well settled that where a party dies subsequent to the commencement of the action and after the court has acquired

personal jurisdiction over him, the entry of judgment against him is a "mere irregularity" which renders the judgment voidable only and therefore immune from collateral attack. (*Machado* v. *Flores* (1946) 75 Cal.App.2d 759, 762 [171 P.2d 440]; *Uppman* v. *Eyraud* (1957) 151 Cal.App.2d 728, 731 [312 P.2d 57]; *Collison* v. *Thomas* (1961) 55 Cal.2d 490, 495-496 [11 Cal.Rptr. 555, 360 P.2d 51].)

Since the federal district court had clearly acquired personal jurisdiction over Seijo prior to his death and had in fact proceeded to enter an interlocutory decree against him, neither the final decree subsequently entered against him nor the *nunc pro tunc* order substituting appellant executrix were void. Appellant's sole remedy was to attack the final decree and the *nunc pro tunc* order directly by appeal. The latter order having been affirmed by the United States Court of Appeals (9th Cir.) and appellant having elected to pursue her direct attack no further, she was bound by the final decree. (*Kirkpatrick* v. *Harvey* (1942) 51 Cal.App.2d 170 [124 P.2d 367].)

Appellant next contends that respondent's cause of action was barred by reason of his failure to file a timely claim against the estate pursuant to Probate Code, sections 707 and 709. This contention is untenable. Publication of notice to the creditors of the Seijo estate commenced, as above noted, on July 30, 1957. Respondent Woolley's claim, based upon the judgment in the admiralty action, was presented to the executrix in October 1957, well within the applicable six months' period (see Prob. Code, § 700). Although appellant argues that the claim was invalid by reason of having been based upon a void judgment, our disagreement has been expounded above. In order to be sufficient, a creditor's claim need not be drafted with the precision and completeness of a pleading and is required only to state such facts as will apprise the executor or administrator of the amount of the demand. (*Burgermeister* v. *Wells Fargo Bank etc. Co.* (1961) 191 Cal.App.2d 624, 629 [13 Cal.Rptr. 123].) In the present case, the trial court was clearly correct in finding that respondent had filed a timely and sufficient claim against the estate.

Appellant's final contention is that respondent was entitled to recover only that portion of the interveners' judgment which was commensurate with appellant's percentage interest in the joint venture. We agree.

It is settled that where one of several joint judgment debtors pays more than his proportionate share of the judg-

ment, he is entitled to obtain a proportionate contribution from those jointly liable with him (Civ. Code, § 1432; *Los Angeles National Bank* v. *Vance* (1908) 9 Cal.App. 57, 59 [98 P. 58]; *Jackson* v. *Lacy* (1940) 37 Cal.App.2d 551, 559 [100 P.2d 313]) and may bring suit against one or more of his codefendants on the implied contract of each obligor to the others that they will share the burden equally. (*Pacific Freight Lines* v. *Pioneer Express Co.* (1940) 39 Cal.App.2d 609, 614 [103 P.2d 1056]; *Tucker* v. *Nicholson* (1938) 12 Cal.2d 427, 431 [84 P.2d 1045].) As an alternate remedy, the judgment debtor may, upon satisfying the judgment, take an assignment thereof in his own name or in the name of a third party. The judgment will then be kept alive in equity to be used by the debtor paying to recover from his coobligors the proportions they should pay, and he may have execution against them. *Tucker* v. *Nicholson, supra,* at pp. 430-431; *Coffee* v. *Tevis* (1861) 17 Cal. 239, 244-245.)

The instant action, although commenced by Woolley, "as trustee," was in fact a proceeding to obtain contribution between joint judgment debtors. An examination of the record discloses undisputed evidence that the judgment in favor of the three interveners in the admiralty action was paid in full by the Marchants and was then assigned to a third party, respondent Woolley, who held the judgment as trustee for the Marchants. Although the evidence also reveals that the Marchants paid virtually the entire judgment in favor of the bank, the Marchants did not elect to bring a suit predicated upon Seijo's implied obligation to reimburse them to the extent of his share of the entire joint judgment. Had they done so, the Marchants would clearly have been entitled to allege and prove the total sum paid by them toward the judgment in favor of the bank and the interveners and to recover from the estate Seijo's proportionate share of the entire judgment. Instead of pursuing this remedy, however, the Marchants, through the trustee Woolley, commenced the present action to enforce the interveners' judgment in full against the Seijo estate. A reading of the complaint in the instant action discloses no allegation of a right to contribution, no reference to the Marchants, and no reference to any judgment other than that in favor of the interveners. However, as the trial progressed, it became apparent that respondent was in fact seeking to enforce the Marchants' right to obtain contribution in an amount equal to Seijo's proportionate share of a total liability undisclosed by the plead-

ings. Although counsel for appellant repeatedly objected to the admission of testimony showing that the Marchants had paid any judgment claim other than that sued upon, respondent persisted in introducing such evidence.

In the light of the authorities previously discussed, it is apparent that this evidence ought to have been excluded. It is equally apparent that the judgment in favor of respondent may not be upheld.  ■■■  In order to enforce his right to contribution, the judgment debtor must have paid more than his own proportionate share of the judgment sued upon and is limited in his recovery to the proportionate shares of the judgment for which his coobligors were liable. (*Jackson* v. *Lacy, supra,* at p. 559; *Tucker* v. *Nicholson, supra,* at pp. 430-431; *Coffee* v. *Tevis, supra,* at pp. 244-245.)

■■■ It follows that respondent was not entitled to enforce the interveners' judgment in full against appellant but was limited in his recovery to an amount equal to Seijo's proportionate share of that judgment. Since the trial court found, in accord with the evidence, that appellant owned a 10 per cent interest in the "Sun King," respondent ought to have been awarded judgment in the principal sum of only $1,127.07, together with such interest as may have accrued thereon since September 27, 1957.

The judgment appealed from is reversed, with directions to the trial court to reduce the principal amount of the judgment against appellant, as executrix of the estate of Juan Seijo, in accordance with this opinion, said judgment to be paid by the estate in the due course of administration.

Agee, J., and Taylor, J., concurred.