STEWART, J.,
Dissenting—There comes a time when the policy favoring relief from defaults gives way to the public policy favoring the finality of judgments. (Rappleyea v. Campbell (1994) 8 Cal.4th 975, 982 [35 Cal.Rptr.2d 669, 884 P.2d 126] (Rappleyea).) As this court has stated, “[office relief is no longer available under section 473, the public policy in favor of finality of judgments predominates, and the power to set aside valid final judgments . . . should be exercised only when exceptional circumstances require that the consequences of res judicata be denied.” (In re Marriage of Stevenot (1984) 154 Cal.App.3d 1051, 1071 [202 Cal.Rptr. 116].) It is the majority’s elevation of the former policy over the latter, with the result that a default judgment that is final is nonetheless virtually always open to challenge, that leads me to dissent.
Here, the majority affirms a trial court order vacating a final judgment under Code of Civil Procedure section 473, subdivision (d)[1] at the request of a party who learned of it before it was final and thus could have applied for relief under section 473, subdivision (b) based on a showing of “mistake, inadvertence, surprise, or excusable neglect.”[2] Had the trustee (Trustee) timely made such an application, she would have had the benefit of the law’s strong policy in favor of relieving parties from default and allowing them their day in court that the majority wields strenuously in defense of what the trial court did. But the Trustee made no such application. Instead, she waited until six months after she learned of the judgment, at which point 10 months had elapsed since the judgment was entered, to move to set the judgment aside, and she did so without explanation or evidence. Because the judgment had in the meanwhile become final and the time for seeking relief under section 473, subdivision (b) had passed, the policy favoring relief from defaults had given way to the equally important policy the majority ignores: the policy of “leaving judgments final” or, stated otherwise, the law’s “distaste for the forfeiture of a judgment, which is vested personal property.” (Rappleyea, supra, 8 Cal.4th at p. 982.)
In affirming this judgment, the majority goes to great lengths to reach the result that it does. It presents a selective and one-sided recitation of the *1017 record, omitting many key facts. In particular, it fails to mention that the Trustee admits she was aware of the default judgment before it was final but sat on her hands until months after it became final when the time for making a motion under section 473, subdivision (b) had lapsed. Nor, therefore, does it discuss the fact that by the time the Trustee moved to set it aside, relief under section 473, subdivision (b) was no longer available. The majority also fails to mention that the complaint was filed and the decedent, McKean, was served with the summons almost a year before he died and that his default was taken five months before he died, and there is no evidence as to why he failed to answer the complaint or seek relief from the default on his own behalf in the first instance.
The majority also takes a detour from the course charted by the parties to discuss arguments about defects it finds in Donald T. Grappo’s underlying complaint and a challenge to his standing. The parties did not raise these arguments, and for good reason. The majority’s standing argument is simply wrong, and its argument that the complaint fails to state a cause of action provides no basis for a collateral attack on the judgment. In chiding the trial court for failing to fulfill its role as “gatekeeper,” the majority oversteps its own role, which is one of decision maker, not advocate. Doing so leads to errors that could have been avoided.
In addressing the arguments the parties did make, the majority ignores decades of settled law—including decisions by our highest court and this one—holding that a judgment entered for or against a dead person is not void but merely voidable. It suggests that this body of law does not apply to judgments obtained by default but provides no authority or rationale for this proposition.
Finally, the majority assumes prejudice based solely on the fact that McKean died before the default judgment was entered, despite the lack of any actual evidence that a different outcome would even potentially have resulted if the Trustee had been substituted shortly after his death. I cannot agree, especially given the Trustee’s failure to take any steps to protect her rights until months after she became aware of the default judgment.
In my view, the failure to substitute the Trustee for the deceased McKean rendered the default judgment here voidable, not void, and it could not be set aside on the ground defendant had died before its entry by a motion filed more than six months (indeed, 10 months) after it was entered. For that reason alone, the order vacating this final judgment should be reversed. In addition, though, even if a final judgment could be attacked at any time on the ground the Trustee here asserted, as the majority implicitly holds, the motion still should have been denied because the Trustee did not show any *1018 prejudice. The majority’s conclusion that there was prejudice, like the trial court’s, is based on speculation. In short, the presumption of correctness we accord this trial court ruling is overcome by two clear legal errors appearing in this record, either one of which alone is reason to reverse.
BACKGROUND
Because the majority’s discussion omits important facts, and focuses on others that in my view are irrelevant, I briefly restate the factual background as I see it.
In November 2013, Grappo commenced this action in propria persona alleging misappropriation of funds in the administration of the Michael A. Grappo 2003 Trust. He prayed for $60,000 in specific damages, various allegedly excessive fees in an unspecified amount and punitive damages. One defendant was Kenneth A. McKean, whom the majority asserts is “not identified in the complaint—and who from all indications had no relationship with Grappo.” (Maj. opn., ante, at p. 999.) But, while the complaint is not an exemplar, it plainly identifies McKean as a trustee, alleging: “Defendant McKean’s duty as a trustee was to either make money for said trust and certainly not to cost it’s [sic] heirs part of their inheritance by causing said trust to lose money.” (Italics added.) The majority also faults the complaint because Grappo “does not even identify himself, or describe any claimed connection or relationship with any of the defendants.” (Maj. opn., ante, at p. 1000; see also id., at p. 1014.) Even apart from the obvious implication from the family name he shares with the trustor that Grappo is one of the “heirs” injured by defendants’ alleged malfeasance, Grappo identifies himself as an “heir” to the trust both in the body of the complaint and its signature block. The Trustee could find no fault with this complaint, criticizing it neither below nor on appeal. In her respondent’s brief she states as obvious that which the majority finds inscrutable: Grappo “filed the trial court action in his capacity as a beneficiary of the Grappo Trust.”[3]
McKean was personally served with process in December 2013 but entered no appearance, and it was not until six months later, on June 30, 2014, that Grappo requested entry of default against him. The clerk entered default the following day, which the majority inexplicably asserts was done “without warning to anyone.” (Maj. opn., ante, at p. 999.) As it acknowledges elsewhere however (maj. opn., ante, at p. 1002), Grappo had previously served McKean with the request for entry of default by mail (on June 19, 2014). He also served two law firms.
*1019 Thereafter, on November 12, 2014, Grappo filed a “written application” requesting the entry of a default judgment against McKean. The court denied the application on various grounds. It also advised Grappo that, under section 580, the court would be limited by the complaint’s allegations to an award of $60,000 in damages, and directed Grappo to use the required Judicial Council forms.
On November 23, 2014, a year after the complaint was filed and roughly four and a half months after McKean’s default had been taken, McKean died.
A short time later, on December 8, 2014, Grappo filed a request for entry of a default judgment against McKean using the required form. In the “Declaration of mailing” portion of the form, Grappo checked a box indicating the request was not mailed to McKean and inserted an explanatory note stating, “Defendant Ken McKean and Ken McKean as owner of McKean & McMills, LP is now deceased and could not be served.”
As the majority notes, no prove-up hearing was held. None was required. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2016) ¶¶ 5:202, 5:208, pp. 5-53 to 5-54; Code Civ. Proc., § 585, subd. (d).)
On December 22, 2014, the court signed and entered a judgment of default against McKean in the amount of $60,750, consisting of $60,000 in principal damages and $750 in costs.[4] Notice of its entry was served only on Grappo.
On May 6, 2015, about six weeks before the judgment would become final, Grappo filed a written creditor’s claim concerning the judgment in trust administration proceedings for McKean’s estate. The Trustee was represented by counsel in that proceeding, and Grappo’s claim specified the date the judgment had been entered, some four and a half months earlier. Upon rejection of the claim, Grappo sued the Trustee, seeking payment of the judgment. Below, the Trustee argued she learned of the default judgment “no earlier” than the date Grappo filed the creditor’s claim.[5]
One and a half months after the Trustee learned about the judgment, it became final, on June 22, 2015, when the 180-day deadline to appeal it expired. (See Cal. Rules of Court, rule 8.104(a)(1)(C); § 12a, subd. (a).)
*1020 Subsequently, on October 29, 2015, nearly six months after the Trustee learned of the default judgment and more than 10 months after the judgment was entered, the Trustee finally took action. She filed a “Notice of Intention to Move to Set Aside and Vacate a Judgment and to Enter Another and Different Judgment,” citing section 663, which was plainly inapplicable,[6] and stating the motion would request the default judgment against McKean be vacated. The stated basis for the motion was that McKean was deceased, yet Grappo sought “to exploit [his] death by seeking enforcement of the Judgment [of] Default against Mr. McKean’s Trust estate in a separate action without first having substituted Mr. McKean’s personal representative in this action and litigating against that personal representative to judgment, as [section] 377.41 requires.” The Trustee argued the judgment was “void” due to McKean’s death, and the motion was timely under section 473.5, which governs motions to set aside defaults or default judgments “[w]hen service of a summons has not resulted in actual notice to a party in time to defend the action.” (§ 473.5, subd. (a).)
Grappo, at this point represented by counsel, opposed the motion by responding to the only two statutory bases invoked, arguing the motion was untimely under section 663 and section 473.5 did not apply because McKean received actual notice of the action well before he died and in time to defend. Grappo also argued there was no prejudice to the Trustee from not having been substituted in as a party, since McKean was alive when his default was taken and there was nothing the Trustee could have done later to avert entry of the default judgment.[7]
For the first time in her reply, the Trustee invoked section 473, subdivision (d), arguing there is no deadline to move to set aside a void judgment under section 473, subdivision (d). Section 473, subdivision (d) authorizes a court, on noticed motion, to “set aside any void judgment.” The reply also alluded to the court’s inherent equitable power to vacate a default judgment and asserted that entry of the default judgment had resulted from extrinsic fraud and mistake. However, other than copies of pleadings from this case and related proceedings, the Trustee submitted no evidence in support of her motion. Thus there was no showing that the default judgment was the product *1021 of any fraud or mistake by McKean, the Trustee or her counsel, or that there was prejudice, i.e., that the Trustee would have acted differently had she been substituted for McKean when he died or had a defense to the action.
Following a contested hearing, the trial court granted the motion to vacate the judgment. The court did not address the motion’s timeliness, but recognized “as a general proposition” that a judgment rendered for or against a decedent “is not void, and . . . will be set aside only upon a showing of prejudice.” (Italics added.) It concluded the Trustee “was not given notice of the existence of the default or the application for default judgment, and thus had no opportunity to seek relief from the default before Default Judgment was entered” and “[t]he prejudice to the Trust is clear.” The court then concluded that the Trustee “has made a sufficient showing that the judgment . . . is void.” (Italics added.) This timely appeal followed.
DISCUSSION
I.

What This Appeal Is Not About

In challenging the trial court’s ruling, Grappo argues principally the Trustee waited too long to move to set aside the default judgment and in any event made an insufficient showing to justify that relief. I agree. Before setting out my reasoning, I address two subjects I believe lead the majority decidedly in the wrong direction.[8]
*1022 First, I have already alluded to the majority’s error in relying on the policy favoring liberal application of section 473 and the adjudication of cases on their merits. The majority cites no case calling for liberal application of the court’s power to vacate a final judgment under section 473, subdivision (cl), which is the critical issue here. Most of the cases the majority cites calling for “section 473” to be liberally applied involve applications for discretionary relief under section 473, subdivision (b), a provision not at issue here. None involves a motion to vacate a final judgment. (See Zamora v. Clayborn Contracting Group, Inc., (2002) 28 Cal.4th 249, 258 [121 Cal.Rptr.2d 187, 47 P.3d 1056]; Au-Yang v. Barton (1999) 21 Cal.4th 958, 961 [90 Cal.Rptr.2d 227, 987 P.2d 697]; Shamblin v. Brattain (1988) 44 Cal.3d 474, 477, fn. 3 [243 Cal.Rptr. 902, 749 P.2d 339]; Elston v. City of Turlock (1985) 38 Cal.3d 227 [211 Cal.Rptr. 416, 695 P.2d 713] (Elston);[9] Fasuyi v. Permatex, Inc. (2008) 167 Cal.App.4th 681, 689, 694-703 [84 Cal.Rptr.3d 351]; McCormick v. Board of Supervisors (1988) 198 Cal.App.3d 352, 356-357, 359-360 [243 Cal.Rptr. 617]; see also Rappleyea, supra, 8 Cal.4th at p. 982 [motion to set aside entry of default filed and ruled on before judgment was entered].) Furthermore, I agree with the majority that Rappleyea is pertinent (see maj. opn., ante, at p. 1011), but the majority ignores what our Supreme Court actually said in that case about the near sanctity of final judgments: “ ‘[W]hen relief under section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court. Beyond this period there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted.’ ” (Rappleyea, at pp. 981-982, italics added.) Presumably my colleagues would agree that if an untimely appeal were taken from a default judgment no amount of liberality could save it. (See, e.g., Shapiro v. Clark. (2008) 164 Cal.App.4th 1128, 1137 [80 Cal.Rptr.3d 398] [appeal held untimely].) Final is final, and liberality has its limits. In short, having cited authorities that do not apply, it is the majority that has approached this case in a manner “contrary to the role of any court dealing with defaults . . . and contrary to public policy.” (Maj. opn., ante, at p. 1011, fn. 5.)
*1023 The second overarching flaw in the majority’s analysis is its detour to address the merits of Grappo’s complaint, and its haste to condemn it as failing to state any cognizable claim for relief and as supposedly reflecting Grappo’s lack of standing. (Maj. opn., ante, at pp. 1000-1001, 1009, fn. 4, 1014-1014.) Neither of the parties raised these issues below, and it was only at our direction that they addressed one of them in supplemental briefing on appeal (the complaint’s sufficiency). I would not reach out to decide either question. (See, e.g., Harnedy v. Whitty (2003) 110 Cal.App.4th 1333, 1338-1339 [2 Cal.Rptr.3d 798]; City of Industry v. City of Fillmore (2011) 198 Cal.App.4th 191, 205 [129 Cal.Rptr.3d 433].) Given that the majority has done so, however, I disagree that “the judgment here is void because the complaint does not support the default judgment entered for Grappo—indeed, any default judgment at all.” (Maj. opn., ante, at p. 1009, fn. 4.) To the extent it suggests the trial court’s ruling can be affirmed on grounds of lack of standing or failure to state a claim, I disagree.[10]
A default judgment cannot be attacked collaterally on the ground the complaint fails to state a cause of action, and is valid as long as the complaint is “sufficient to apprise [the defendant] of the nature of the [plaintiff’s] demand.” (Molen v. Friedman (1998) 64 Cal.App.4th 1149, 1156-1157 [75 Cal.Rptr.2d 651]; see also Ferraro v. Camarlinghi (2008) 161 Cal.App.4th 509, 539 [75 Cal.Rptr.3d 19] [“If the complaint, though defective, ‘ “apprises the defendant of the nature of the plaintiff’s demand,” ’ the entry of default is merely erroneous, not void”]; Barquis v. Merchants Collection Assn. (1972) 7 Cal.3d 94, 99, 122 [101 Cal.Rptr. 745, 496 P.2d 817].) Falahati v. Kondo (2005) 127 Cal.App.4th 823 [26 Cal.Rptr.3d 104], a decision the majority has cited (maj. opn., ante, at p. 1015), makes this very point: “a default judgment is not necessarily void just because it is based on a complaint which fails to state a cause of action” (Falahati, at p. 830). Rather, “[a] default judgment is void if the trial court lacked jurisdiction over the parties or the subject matter of the complaint or if the complaint failed to ‘apprise[] the defendant of the nature of the plaintiff’s demand,’ or if the court granted relief which it had no power to grant including a default judgment which exceeds the amount demanded in the complaint.”[11] (Falahati, at p. 830, fn. omitted; accord, Christerson v. French (1919) 180 Cal. 523, 525 [182 P. 27].) Whatever the shortcomings of Grappo’s complaint, it surely apprised McKean of the nature of the claim upon which the court entered judgment: he alleged personal property was unlawfully removed from the Piedmont property and *1024 McKean was the person who authorized its removal, and prayed for $60,000 in damages as a result. (See, e.g., Molen, at p. 1157 [complaint sufficient to apprise defendants that plaintiffs demanded damages for losses occasioned by breach of lease, specifically, “$23,795.34 plus $9,000 per month for 129 months”].) It therefore is immaterial that, as pointed out by my colleagues (maj. opn., ante, at p. 1015), Grappo’s counsel acknowledged at oral argument (commendably, in my view) the complaint does not state a claim. For much the same reason, I also disagree with the majority’s conclusion that the judgment is void because “the $60,000 amount awarded to Grappo is not supported by the complaint.” (Ibid.) The $60,000 damages award matches the complaint’s demand to the penny. A default judgment is void if the damages award exceeds the amount of damages specified in the complaint, because the court lacks jurisdiction to award anything higher. (See David S. Karton, A Law Corp. v. Dougherty (2009) 171 Cal.App.4th 133, 150 [89 Cal.Rptr.3d 506]; Falahati, at p. 830.)
As for Grappo’s standing, I read the law quite differently than the majority. While “ ‘[a]s a general rule, the trustee is the real party in interest with standing to sue and defend on the trust’s behalf[,]’ . . . this general rule does not extend to an action alleging the trustee itself breached a duty. ‘[A] trust beneficiary can bring a proceeding against a trustee for breach of trust.’ ” (Estate of Giraldin (2012) 55 Cal.4th 1058, 1075-1076 [150 Cal.Rptr.3d 205, 290 P.3d 199], citation omitted.) The majority cites no case to the contrary. What is more, the majority overlooks this court’s own decision in Harnedy v. Whitty, supra, 110 Cal.App.4th 1333, which analyzed the case law at length and recognized that beneficiaries have standing to sue a trustee for the trustee’s own malfeasance. (See id. at pp. 1338-1342.) We could not have put it more plainly: “when the claim being asserted rests in whole or in part on alleged breaches of trust by the trustee, a beneficiary has standing to pursue such a claim against either (1) the trustee directly, (2) the trustee and third parties participating in or benefiting from his, her or its breach of trust, or (3) such third parties alone.” (Id. at pp. 1341-1342.) We explained that “[o]«Zy in circumstances ... [in which] no misfeasance or breach of trust by the trustee is asserted and the beneficiary is effectively seeking to step into the shoes of the trustee and enforce the trust agreement directly, does the beneficiary lack standing.” (Id. at p. 1342; see also id. at p. 1342, fn. 2.) Thus, under these authorities the majority nowhere acknowledges, it is plain that Grappo, a trust beneficiary, has standing to sue McKean for breaches of duty McKean committed while acting as a trustee—including allegedly disposing of personal property being stored at the Piedmont property that was allegedly under McKean’s management and supervision.
In short, I cannot sustain the trial court’s ruling on either of the grounds that the majority has independently raised.
*1025 I turn now to the questions that the parties have raised on appeal.
II.

The Trustee’s Motion Was Timely Under Section 473, Subdivision (d) Only if the Default Judgment Was Void.

The majority holds the trial court properly vacated this judgment under section 473, subdivision (d). (Maj. opn., ante, at p. 1009.) That provision states, “The court . . . may, on motion of either party after notice to the other party, set aside any void judgment or order.” (§ 473, subd. (d).) This provision “does not place any time limit on bringing such a motion.” (Tearlach Resources Limited v. Western States Internat., Inc. (2013) 219 Cal.App.4th 773, 779 [162 Cal.Rptr.3d 110].) By contrast, a judgment that is not void but merely voidable may not be set aside beyond the six-month time limit of section 473, subdivision (b). (See Lee v. An (2008) 168 Cal.App.4th 558, 563 [85 Cal.Rptr.3d 620] (Lee); accord, Torjesen v. Mansdorf (2016) 1 Cal.App.5th 111, 118 [204 Cal.Rptr.3d 325] (Torjesen); see also § 473, subd. (b).) After six months, once discretionary relief from a default judgment under section 473, subdivision (b) is no longer available, as already noted, the public policy favoring finality of judgments comes into play. (See Rappleyea, supra, 8 Cal.4th at pp. 981-982.) “ ‘A motion to vacate a judgment, made after the expiration of the six-month period allowed in section 473 of the Code of Civil Procedure ... is governed by the rules applicable to collateral attack. [Citations.] In the absence of extrinsic fraud or mistake [citation] a judgment so attacked cannot be set aside unless it is void . . . .’ ”[12] (Torjesen, at p. 116; accord, Cruz v. Fagor America, Inc. (2007) 146 Cal.App.4th 488, 495-496 [52 Cal.Rptr.3d 862].)
In short, the trial court’s power to set aside this final judgment under section 473, subdivision (d) turns on whether the judgment was void, or merely voidable, due to McKean’s death, a question we review de novo. (See Rodriguez v. Clio (2015) 236 Cal.App.4th 742, 752 [187 Cal.Rptr.3d 227].) The majority does not expressly hold that the judgment here was void, but that is the necessary implication of its decision. It is an implication with which I cannot agree.
*1026 III.

The Default Judgment Was Not Absolutely Void.

Lee sets out a helpful framework for understanding whether a judgment is void or merely voidable. Lee explained, “The distinction between void and voidable orders is frequently framed in terms of the court’s jurisdiction. ‘Essentially, jurisdictional errors are of two types. “Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.” [Citation.] When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and “thus vulnerable to direct or collateral attack at any time.” [Citation.]’ [Citation.] For example, if a defendant is not validly served with a summons and complaint, the court lacks personal jurisdiction and a default judgment in such action is subject to being set aside as void.” (Lee, supra, 168 Cal.App.4th at pp. 563-564.) By contrast, “ ‘[w]hen a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside ....’” (Torjesen, supra, 1 Cal.App.5th at p. 117.) Errors that “ ‘are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final . . . .’ ” {Ibid.; accord, Lee, at pp. 565-566 [“ ‘a party seeking to set aside a voidable judgment or order must act to set aside the order or judgment before the matter becomes final’ ”].)
This court recognized in Woolley v. Seijo (1964) 224 Cal.App.2d 615 [36 Cal.Rptr. 762] (Woolley), another of our cases the majority does not discuss, that a judgment rendered against a defendant after his death but before substitution of his personal representative is not void. {Id. at p. 620.) The contrary contention is “meritless,” we said, because “[i]t is settled that a judgment for or against a dead person is void only if the plaintiff or defendant was dead before the action was begun. [Citation.] It is equally well settled that where a party dies subsequent to the commencement of the action and after the court has acquired personal jurisdiction over him, the entry of judgment against him is a ‘mere irregularity’ which renders the judgment voidable only and therefore immune from collateral attack.” (Id. at pp. 620-621; accord, Collison v. Thomas (1961) 55 Cal.2d 490, 495-496 [11 Cal.Rptr. 555, 360 P.2d 51]; see also, e.g., Machado v. Flores (1946) 75 Cal.App.2d 759, 762 [171 P.2d 440] (Machado) [“[T]he California courts are not committed to the position advanced by appellants that the death of a party, ipso facto, renders absolutely void, a judgment for or against such party”].)
*1027 Witkin, on which the majority otherwise relies (maj. opn., ante, at pp. 1007-1008), concurs: “Death occurring during the trial, and before verdict or submission for decision, generally results in a voidable, not void, judgment. The executor or administrator should be substituted as a party, but failure to substitute is merely error, not a jurisdictional defect, and the judgment is not subject to collateral attack.” (7 Witkin, supra, Judgment, § 4, pp. 549-550, italics added; see also 4 Witkin, supra, Pleading, § 259, p. 335 [“Failure to substitute, however, is merely a procedural irregularity, not an act in excess of jurisdiction”]; 2 Witkin, supra, Jurisdiction, § 317, p. 929 [“This technical lapse . . . does not render the judgment void and subject to collateral attack. The courts frequently describe it as a ‘mere irregularity,’ which renders the judgment ‘voidable only’ ” (italics added)].)
The principle that a judgment is not void but merely voidable where a party has died derives from California Supreme Court authority dating back more than a century. (See Todhunter v. Klemmer (1901) 134 Cal. 60, 63 [66 P. 75] (Todhunter) [“the death of a party pending suit does not oust the jurisdiction of the court, and hence ... the judgment is voidable only, not void”]; Phelan v. Tyler (1883) 64 Cal. 80, 82 [28 P. 114] (Phelan) [“ ‘in such cases, the judgment is simply erroneous, but not void . . . because the court having obtained jurisdiction over the party in his lifetime, is thereby empowered to proceed with the action to final judgment’ ”].) Although a court should refrain from exercising its jurisdiction over a party who dies, its failure to do so is merely an error that may be corrected, because the court’s jurisdiction is not suspended without a substitution of the decedent’s personal representative. (See Phelan, at pp. 82-83.) “ ‘[A] judgment against a person dead at its rendition is valid until reversed or set aside by some competent judicial authority, and . . . cannot be collaterally attacked ....’” (Tyrrell v. Baldwin (1885) 67 Cal. 1, 5 [6 P. 867], italics added (Tyrrell).)
The results in many cases reflect this rule. For example, Tyrrell held a judgment entered against a defendant in a dispute over real property ownership was not void even though the defendant died before trial, and was admissible in a later action brought by the decedent’s grantees concerning the same subject matter. (See Tyrrell, supra, 67 Cal. at pp. 4-5.) Woolley held a federal judgment entered jointly and severally against a defendant who died before its rendition was enforceable against his estate in an independent state action; it could not be collaterally attacked in the latter action. (See Woolley, supra, 224 Cal.App.2d at pp. 620-621.) Todhunter upheld a judgment enforcing an appeal bond, holding the death of one of the plaintiffs before entry of judgment in the underlying suit did not render either the judgment or the bond void and unenforceable, but merely voidable. (See Todhunter, supra, 134 Cal. at pp. 62-63.) And Phelan held the death of a party pending an appeal did not render the Supreme Court’s subsequent decision and judgment in the case void even though no personal representative was ever substituted *1028 into the case, and the judgment had preclusive effect on a later action. (See Phelan, supra, 64 Cal. at pp. 82-83.)
The majority’s suggestion that a different rule applies to default judgments is not supported by any authority of which I am aware, and at least one Court of Appeal decision has permitted a default judgment to be enforced though entered in the name of a dead person. Machado affirmed a judgment of nonsuit in an equitable action to enjoin enforcement of a default judgment entered in the name of a plaintiff who had died after filing the action but before summons was served, and whose representative was not substituted in until after the judgment was entered. (See Machado, supra, 75 Cal.App.2d at pp. 760-761, 763.) The court held the judgment was not void, and its enforcement could only be prohibited on an equitable basis and no such basis had been shown. (Id. at pp. 762-763.)
Against this weight of authority, the majority cites a number of decisions describing judgments entered in the name of a dead party as “void.” (See Johnson v. Simonelli (1991) 231 Cal.App.3d 105, 107, fn. 1 [282 Cal.Rptr. 205]; Herring v. Peterson (1981) 116 Cal.App.3d 608, 612 [172 Cal.Rptr. 240]; Estate of Edwards (1978) 82 Cal.App.3d 885, 893 [147 Cal.Rptr. 458]; Estate of Parsell (1923) 190 Cal. 454, 456 [213 P. 40].) Every one of those cases involved a direct attack on a nonfinal judgment, made by way of timely appeal (see Johnson, at p. 107 [appeal from summary judgment]; Herring, at p. 610 [appeal from order of dismissal]; Estate of Edwards, at p. 887 [appeal from judgment]) or a timely postjudgment motion filed within six months after entry of judgment (see Estate of Parsed, at p. 455 [assuming such fact]). While the courts described those voidable judgments as “void,” the distinction was immaterial and not at issue, and so the language was dictum. (See Torjesen, supra, 1 Cal.App.5th at p. 118; see also Hogan v. Superior Court (1925) 74 Cal.App. 704, 709 [241 P. 584] [rejecting “contention that under all circumstances a judgment is void where it is rendered for or against a deceased party,” and observing “Estate of Parsed . . . does not so hold”].) None of these authorities authorize a trial court to vacate a final judgment based solely on the judgment having been entered in the name of a deceased party.[13]
*1029 The majority also asserts that ‘“[w]e are not aware of any void versus voidable case that deals with a default judgment taken against a dead person,” and states that it ‘“might be inclined to hold in that situation that the judgment is void” though it declines to expressly so hold. (Maj. opn., ante, at p. 1009.) But the majority does not explain why a different ‘“void/voidable” rule should apply to a default judgment than to all other judgments entered in the name of a dead person. The court is not divested of jurisdiction to proceed when a defendant dies after the court has already acquired personal jurisdiction over the defendant, which is why such a judgment is voidable and not void. (Woolley, supra, 224 Cal.App.2d at pp. 620-621; Collison v. Thomas, supra, 55 Cal.2d at pp. 495-496.) This is true whether the judgment is issued after litigation on the merits or obtained by default. In my view, there is no reason a court’s error in entering a judgment on the merits against a party who has died should be immune from collateral attack but the same error should render a default judgment absolutely void, open to attack at any time even after it has become final. And Rappleyea strongly suggests otherwise. (Rappleyea, supra, 8 Cal.4th at pp. 981-982.)
In sum, this judgment was not void but merely voidable, and so the Trustee should have moved to set it aside within six months of its entry, before it became final and immune to collateral attack. Indeed, the Trustee knew about the judgment before the six months lapsed yet sat on her rights. The Trustee’s belated motion should have been denied. (See Torjesen, supra, 1 Cal.App.5th at p. 118; Lee, supra, 168 Cal.App.4th at p. 561.)
IV.

The Trial Court Erred in Vacating the Judgment Because There Is No Substantial Evidence the Trustee Was Prejudiced.

The trial court’s ruling in this case can and should be reversed solely on the ground that the Trustee’s motion was untimely, and I could stop there. But I also disagree with the majority that the judgment can be affirmed ‘“on the basis on which [the trial court] ruled, applying Sacks [v. FSR Brokerage, Inc. (1992) 7 Cal.App.4th 950 [9 Cal.Rptr.2d 306]], [and] finding prejudice.” (Maj. opn., ante, at p. 1009.) Rather, as I see it, even if the majority’s implicit holding is correct—that there is no time limit for challenging a default judgment where the defendant died between the taking of his default and the entry of judgment on the default—the Trustee demonstrated no prejudice that would justify setting aside the judgment here.
The majority posits that ‘“perhaps using the Sacks analysis in the default situation . . . death is per se prejudice” (maj. opn., ante, at p. 1009), by which *1030 I take the majority to mean “renders a judgment void.” But that cannot be true, as just demonstrated by the many cases rejecting collateral attacks on judgments entered in the name of a party who died. (See Tyrrell, supra, 67 Cal. at pp. 4—5; Todhunter, supra, 134 Cal. at pp. 62-63; Phelan, supra, 64 Cal. at pp. 82-83; Woolley, supra, 224 Cal.App.2d at pp. 620-621; Machado, supra, 75 Cal.App.2d at pp. 760-763.) A further flaw in the majority’s hypothesis—that Sacks authorizes a collateral attack on a judgment against a dead person where a showing of prejudice is made—is that like the other cases the majority cites, Sacks, too, was a direct attack on the judgment, specifically, a timely appeal from a judgment entered after a grant of summary judgment. (See Sacks v. FSR Brokerage, Inc., supra, 1 Cal.App.4th at pp. 953-956 (Sacks).)
Setting aside the timing issues already discussed, I do agree that no matter the context or timing, a trial court’s error in rendering judgment for or against a decedent may be redressed only if there was some kind of prejudice “because of lack of notice, lack of proper representation, or some other disadvantage.” (Sacks, supra, 1 Cal.App.4th at p. 957; see id., at pp. 958-959, and authorities cited.) But I cannot agree with the majority there was any showing of prejudice here. Specifically, I do not agree that the Trustee’s lack of opportunity to seek relief from the default before entry of the default judgment alone was enough.[14] (Maj. opn., ante, at p. 1010.) The trouble with this conclusion is that it is premised on an assumption, and not on evidence, that the Trustee could and would have sought such relief—and obtained it—had she been substituted into the case before the judgment was entered.
As already mentioned, there is no evidence showing when the Trustee actually learned about the default. For all we know from the record, as opposed to the Trustee’s assertion in her briefs, the Trustee could have learned of the action from McKean before he died or from his partner and codefendant, Heather McMills, after he died but before the default judgment was entered. I say this not with a “jaundiced eye” as my colleagues posit (maj. opn., ante, at p. 1011, fn. 5), but because of the lack of any evidence bearing on when the Trustee first learned of the default proceedings, let alone the lawsuit itself or its status. (Cf. Pulte Homes Corp. v. Williams Mechanical, Inc. (2016) 2 Cal.App.5th 267, 276-278 [206 Cal.Rptr.3d 244] (Pulte Homes) [discussing unexplained gaps in moving party’s evidentiary showing, and reversing order granting motion to vacate default judgment as abuse of *1031 discretion].) Contrary to the majority’s assertion, moreover, this is not a matter as to which we may presume the correctness of a factual inference. (Maj. opn., ante, at p. 1011, fn. 5.) After all, even factual inferences must be supported by substantial evidence, yet there is nothing in this record from which any factual inference on this subject can be drawn. (See Shapiro v. Board of Directors (2005) 134 Cal.App.4th 170, 178-179 [35 Cal.Rptr.3d 826]; see also State Farm Fire & Casualty Co. v. Pietak (2001) 90 Cal.App.4th 600, 610 [109 Cal.Rptr.2d 256] [reciting familiar rule that “ ‘when two or more inferences can reasonably be deduced from the facts, a reviewing court lacks power to substitute its deductions for those of the trial court’ ”]; Roddenberry v. Roddenberry (1996) 44 Cal.App.4th 634, 651 [51 Cal.Rptr.2d 907] [“[inferences may constitute substantial evidence, but they must be the product of logic and reason. Speculation or conjecture alone is not substantial evidence”].) Simply put, the record here is completely silent as to whether the Trustee knew anything about this lawsuit before Grappo filed his creditors’ claim. The majority’s assertion that she did not is not “inference,” but conjecture.
But even accepting the unsupported assertion in the Trustee’s brief below that she did not learn of the default before she was served with the creditor’s claim, which was after the judgment was entered, she has still failed to show prejudice. That is because she made not the slightest showing that she had any substantive basis to challenge the entry of default. Nor did she provide any evidence that if relief from default had been granted there was any viable defense she could have raised on the merits. So no showing was made that any rights were lost. This might have been a different case had the Trustee introduced evidence that some potential basis for challenging the default was lost when the case proceeded to judgment in her absence. But given her tactical choice not to do so, in my view the mere fact that a judgment was entered on the default is insufficient to establish prejudice.
Here, therefore, the trial court erred in vacating the judgment because there is no substantial evidence the Trustee was prejudiced. (See Pulte Homes, supra, 2 Cal.App.5th at p. 272 [substantial evidence review of order vacating default judgment].) As in Sacks, any error in entering the judgment against McKean rather than his personal representative “could at most be a technical one” that did not have “the slightest effect” on the results of this litigation. (Sacks, supra, 7 Cal.App.4th at p. 959.) This record does not show that “a different result would have been probable” had Grappo substituted the Trustee in for McKean before requesting entry of judgment. (§ 475; see also Leavitt v. Gibson (1935) 3 Cal.2d 90, 105-106 [43 P.2d 1091] [affirming order denying executor’s motion to vacate judgment entered nunc pro tunc against defendant who died during trial after evidence closed and posttrial briefing was nearly complete, and affirming judgment, because “[e]very *1032 privilege which could in the ordinary cause of events inure to the benefit or advantage of the defendant had absolutely accrued before his demise”].)
Indeed, this record demonstrates the Trustee was not prejudiced. She admits she knew about this judgment four and a half months after it was entered, which was well in time to move to set it aside on the basis of mistake, inadvertence, surprise or excusable neglect (§ 473, subd. (b)). Yet she made no effort to do so. She did nothing at all to seek relief for a full six months after she learned of the judgment. So the timing of Grappo’s request for entry of a default judgment could not be prejudicial. (Cf. Rodriguez v. Henard (2009) 174 Cal.App.4th 529, 537 [94 Cal.Rptr.3d 313] [defendants not prejudiced by defect in mailing notice of application for entry of default judgment where they ‘“learned of the default and default judgment in sufficient time to bring a motion for [discretionary] relief under section 473, and they did in fact file such a motion . . . [but] . . . failed to satisfy the trial court that any statutory basis upon which to set aside the default and default judgment existed”].)
Y.

Equitable Relief Was Unavailable.

Here, the majority affirms the trial court’s ruling solely on the ground the trial court properly applied section 473, subdivision (d), and does not consider whether the trial court’s ruling could be sustained on the alternative ground that it was within the court’s discretion to grant the Trustee equitable relief from the judgment due to extrinsic fraud or mistake. Because I disagree that relief was available under section 473, I briefly address the Trustee’s argument that equitable relief was available too, a question reviewed for abuse of discretion. (See Rappleyea, supra, 8 Cal.4th at pp. 980-981 [considering whether trial court’s ruling denying relief from default could be sustained as proper exercise of its equitable powers where court misapplied § 473]; see also Pulte Holmes, supra, 2 Cal.App.5th at pp. 272, 275-278.)
Here, the Trustee argues in passing that “[t]he default judgment resulted from extrinsic fraud and mistake,” because Grappo ‘“did not inform the trial court of Mr. McKean’s . . . death before applying for the default judgment,” which led the court to “mistakenly enter[] the default judgment on December 22, 2014.” I would reject this argument, first, because Grappo did inform the court of McKean’s death before entry of judgment, although the parties overlooked this below and in their appellate briefs. Equitable relief also could not have been granted, in any event, because the Trustee made no showing she had a meritorious defense, a showing required to set aside the judgment on equitable grounds. (See Lee, supra, 168 Cal.App.4th at p. 566; Machado, *1033 supra, 75 Cal.App.2d at p. 763.) Nor did she show diligence in seeking equitable relief, which also is required. (See Pulte Holmes, supra, 2 Cal.App.5th at pp. 277-278 [largely unexplained five-month delay held dilatory as a matter of law].) So in my view, for these separate reasons, the trial court would have abused its discretion had it vacated this judgment based on its inherent equitable powers.
CONCLUSION
To be clear, it is not my position that it is proper to enter a default judgment (or any judgment, for that matter) in the name of a party who has died. Such a judgment is erroneous. But like many other types of trial court error, an error of this sort—rendering the judgment merely voidable not void—may be challenged only by certain means, and here those means were not utilized: through a direct, timely attack within six months, or through a collateral attack on an equitable basis not proved here by this record. I cannot agree with the rule adopted by the majority that renders such a judgment open to attack anytime and achieves finality in name only. Nor do I concur that it is open to attack at all in the absence of evidence indicating the failure to substitute had any effect on the outcome of the case. Nor, finally, do I reach either conclusion in derogation of our duty as a reviewing court to presume the correctness of the trial court’s ruling (maj. opn., ante, at p. 1011, fn. 5); they are conclusions I reach based upon careful scrutiny of both this record and the law. In my view, the trial court erred when it vacated this judgment. Regardless of the majority’s concerns for the potential substantive merits of this lawsuit, and regardless of the somewhat clumsy manner by which Grappo, a layperson, set about to request entry of this default judgment, this judgment did become final, and as such it constituted a vested property right that the majority, in affirming, far too lightly casts aside. (See Rappleyea, supra, 8 Cal. 4th at p. 982.)
I would therefore reverse the grant of relief from the default judgment and reinstate the judgment.
Appellant’s petition for review by the Supreme Court was denied September 13, 2017, S242927.

 All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

 An application for relief under section 473, subdivision (b) must be accompanied by “a copy of the answer or other pleading proposed to be filed” and be made “within a reasonable time, in no case exceeding six months, after the judgment . . . was taken.”

 The Trustee also tells us in her brief that McKean was the general partner of the entity that served as Trustee and, indeed, Grappo’s “primary contact.”

 As the majority notes (maj. opn., ante, at pp. 1001, 1003), Grappo took the default and procured entry of a default judgment in the same amount against McKean’s partnership, McKean & McMills, LP, too, but the trial court declined to set that judgment aside and it is not at issue in this appeal.

 The Trustee’s assertion, made in the papers and orally at the healing, was based only on the creditor’s claim. The Trustee filed no declaration, and there is no evidence that she did not learn of the default proceedings earlier.

 Section 663 authorizes posttrial relief from a judgment “based upon a decision by the court, or the special verdict of a jury,” and entry of “another and different judgment” and “may only be brought when ‘the trial judge draws an incorrect legal conclusion or renders an erroneous judgment upon the facts found by it to exist’ ” (Payne v. Rader (2008) 167 Cal.App.4th 1569, 1574 [85 Cal.Rptr.3d 174], italics omitted). It does not apply to default judgments. (See Hearn v. Howard (2009) 177 Cal.App.4th 1193, 1207, fn. 5 [99 Cal.Rptr.3d 642]; First Nat. Bank v. Turnbull (1950) 99 Cal.App.2d 764, 766 [222 P.2d 494].)

 The majority criticizes the brevity of this written opposition (“all of three pages” (maj. opn., ante, at p. 1004)), but the Trustee’s substantive argument was equally brief and she invoked two inapplicable statutes.

 I agree with the majority that the other issue Grappo raises furnishes no ground for reversal (namely, that the Trustee raised § 473, subd. (d) improperly below only in her reply papers). But I would not be so quick to condemn the quality of Grappo’s appellate briefing. (Maj. opn., ante, at p. 1006.) While Grappo’s opening brief is no “model of appellate advocacy” (ibid,), his presentation of the facts is not nearly as one sided as the majority describes it, and his reply brief states the arguments I believe should carry the day. And while Grappo’s briefing does misstate that he did not know of McKean’s death when he requested entry of a default judgment (ibid,), the most plausible explanation is oversight on his counsel’s part, not intentional misrepresentation. The evidence that McKean died before judgment consists of one sentence in tiny print on Grappo’s form request for default judgment, which he filed in propria persona two years ago. Apparently, nobody noticed this, including the Trustee’s counsel who makes similar misstatements in her own brief by accusing Grappo of “applfying] for and obtainfing] a default judgment . . . without notifying the trial court that Mr. McKean had died.” At oral argument, the Trustee’s counsel even stated it was “just as likely if not more likely” that the trial court did not notice this either when entering the default judgment. The fact that Grappo was aware of McKean’s death and notified the trial court of it in his request for entry of default judgment surfaced during this court’s review of the record.
In any event, to the extent the majority has concerns about the quality of the parties’ briefing, I am puzzled as to why the Trustee emerges free from criticism. It was the Trustee, for example, who moved in the trial court under section 663, yet on appeal disavows that *1022 statute, arguing it was “immaterial” to the trial court’s ruling. While true, that is only because the Trustee managed eventually to cite the proper statute (§ 473, subd. (d)) in her reply papers, after relying on two plainly inapplicable statutes in her opening papers. Indeed, at oral argument the Trustee’s counsel candidly admitted that “we threw all the statutes at it” in the trial court papers.

 The majority quotes Elston at some length but omits the opening sentence of Elston’s analysis, which illuminates it involved relief under section 473, subdivision (b): “Section 473 permits the trial court to ‘relieve a party . . . from a judgment, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise or excusable neglect.’ ” (Elston, supra. 38 Cal.3d at pp. 232-233; see also id, at p. 233, fn. 4 [quoting the text of § 473, subd. (b)].)

1 have no disagreement that trial courts must carefully and properly discharge their' gatekeeping role when asked to enter a judgment by default. But here, the trial court did so, rejecting Grappo’s first request for entry of a default judgment, directing him to try again and limiting the judgment to an amount specifically alleged in the complaint.

 Other cases cited by the majority involve direct appeals from a default judgment and are not on point. (See Kim v. Westmoore Partners. Inc. (2011) 201 Cal.App.4th 267 [133 Cal.Rptr.3d 774]; Rose v. Lawton (1963) 215 Cal.App.2d 18 [29 Cal.Rptr. 844].)

 To be clear, extrinsic fraud or mistake constitutes a separate basis for collaterally attacking a final judgment (whether or not the judgment is argued to be void), pursuant to a court’s equitable powers. (See generally 8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 215, p. 823.) But Rappleyea instructs that equitable relief from a final judgment “may be given only in exceptional circumstances.” (Rappleyea. supra. 8 Cal.4th at p. 981.) I discuss the unavailability of potential equitable relief from this judgment, post.

 As the majority notes (maj. opn., ante, at p. 1008), language in some of these cases describing judgments as “void” derives from Judson v. Love (1868) 35 Cal. 463, where the Supreme Court described proceedings conducted after a defendant had died as “irregular and void” (id. at p. 467) and “ineffectual” (id. at p. 470). But Judson also did not involve a collateral attack on a final judgment; it, too, was a direct appeal from a judgment entered in the name of a deceased defendant who had died before entry of judgment. (See id. at pp. 466-467.) Indeed, the judgment in that case was valid, and left to stand (because the defendant had died after the verdict had been rendered). (See id. at p. 467.)

 1 also do not agree Grappo’s counsel conceded this issue at the hearing. (Maj. opn., ante. at p. 1010.) The majority is too quick to pounce on a passing comment (“Right”) that, in context, strikes me as little more than throat-clearing. Indeed, she later returned to her no prejudice argument, telling the trial court again that, “once the default was entered, then it had absolutely no effect whether he was alive or not when his default judgment was entered. And so that’s when—by no prejudice—,” to which the court responded, “Okay.”